J-E02009-18

2019 PA Super 48

| | |
|---|---|
| IN THE INTEREST OF: S.U., A MINOR | : IN THE SUPERIOR COURT OF<br>: PENNSYLVANIA<br>:<br>: |
| APPEAL OF: R.U., FATHER | : <br>: <br>: <br>: <br>: <br>: No. 888 MDA 2017 |

Appeal from the Orders Entered May 4, 2017
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s): CP-36-DP-0000083-2017

BEFORE: GANTMAN, P.J., BENDER, P.J.E., PANELLA, J., SHOGAN, J.,
LAZARUS, J., STABILE, J., DUBOW, J., NICHOLS, J., and
McLAUGHLIN, J.

OPINION BY NICHOLS, J.: **FILED FEBRUARY 21, 2019**

R.U. (Father) appeals[1] the order adjudicating his minor son, S.U. (Child), dependent, maintaining Child's placement in foster care, setting Child's permanency goal to adoption, and terminating Father's visitation. Father also appeals a separate order entered the same day, which found aggravated circumstances and directed that the Lancaster County Children and Youth Social Service Agency (the Agency) make no efforts to reunify Child with Father.[2] We affirm.

---

[1] K.U. (Mother) did not separately appeal, but filed an "appellee's" brief supporting Father's appeal.

[2] We discourage the practice of filing one notice of appeal from two final orders, but decline to quash. **See generally Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.**, 263 A.2d 448, 452-53 (Pa. 1970) (holding "that a single appeal is incapable of bringing on for review more than one final order, judgment or decree" except when circumstances permit appropriate appellate

The relevant factual and procedural history of this case follows. On April 12, 2017, the Agency filed a dependency petition and a petition for temporary custody of Child. In its dependency petition, the Agency stated that Father and Mother (collectively, Parents) have a protracted history with the Agency. *See* Dependency Pet., 4/12/17, at Allegations of Dependency ¶ F. Specifically, the Agency asserted that two of Parents' younger sons, J.U.1 and J.U.2, were already dependent. *Id.* On May 18, 2016, Parents voluntarily relinquished their parental rights to J.U.1, and their parental rights to J.U.2 were terminated involuntarily on March 28, 2017. *Id.*

The Agency further stated that it received a referral regarding Child on March 27, 2017, which alleged that Child suffered from poor hygiene and that Mother was using illegal substances, including cocaine. *Id.* at ¶ A. Following an investigation, the Agency discovered that Child was living with Parents in a one-bedroom apartment "with a mattress that the family share[d]." *Id.* at ¶ D. On April 5, 2017, Courtney Ross, a caseworker for the Agency, made an unannounced home visit. *Id.* at ¶ C. Parents refused a random drug screen. *Id.* On a subsequent unannounced visit, on April 7, 2017, Father submitted to a drug screen and tested negative. *Id.* at ¶ D. Mother tested positive for THC[3] and cocaine. *Id.*

---

review); ***Dong Yuan Chen v. Saidi***, 100 A.3d 587, 589 n.1 (Pa. Super. 2014).

[3] Tetrahydrocannabinol.

- 2 -

On April 12, 2017, the Honorable Jay J. Hoberg entered an order granting the petition for temporary custody and placing Child in foster care. *See* Order, 4/12/17. The order scheduled a hearing for April 13, 2017, and appointed H. Allison Wright, Esq., to represent Father, David Peiffer, Esq., to represent Mother, and Jeffrey Gonick, Esq., to represent Child as guardian *ad litem* (GAL). ***Id.*** Attached to the order was a notice, which provided, in relevant part, the following:

> THE LAWYER APPOINTED FOR YOU WILL REPRESENT YOU, WITHOUT CHARGE, ONLY AT THE FIRST SCHEDULED HEARING. THIS LAWYER HAS BEEN PROVIDED A COPY OF THIS PETITION AND WILL BE PRESENT AT THE HEARING. IT IS YOUR RESPONSIBILITY TO CONTACT THE LAWYER PRIOR TO THE HEARING.
>
> IF YOU WISH TO HAVE A LAWYER AFTER THE FIRST HEARING, AND CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE[] SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Notice, 4/12/17 (emphasis in original). The notice further provided a list of documents Father needed to provide to obtain a court-appointed attorney. ***See id.***

On April 13, 2017, the court continued the hearing to April 18, 2017, due to the unavailability of the GAL and counsel for Parents. We have included below the order and notice, which indicates that Father was served individually.

Date of Hearing: 4/13/17

## SHELTER CARE ORDER

AND NOW, this 13th day of April, 2017, after hearing, the Court hereby finds as to the necessity of placement.

1. ☐ The request for continuance is denied because _____ _____

2. ✓ The hearing is continued at the request of: ✓Agency ☐ Mother ☐ Father ☐ Guardian ☐ Master ☐ insufficient time ☐ other _____ The hearing shall be rescheduled as soon as permitted by the schedule of the Court.

3. ✓ The juvenile shall remain in the custody of _____ *Agency* _____ until the hearing.

4. ✓ The Court continues/places the child in the care, custody and control of the Lancaster County Children and Youth Social Service Agency.

5. ☐ Said juvenile is placed in the Protective Supervision of the Lancaster County Children and Youth Social Service Agency. Physical custody shall remain with _____

6. ☐ The Court hereby approves relative placement of said child if an appropriate caretaker can be located by the Lancaster County Children and Youth Social Service Agency.

7. ☐ The child shall remain in relative care.

8. ☐ The Court finds that reasonable efforts were made/were not made to avoid placement of the child and that his/her continuation in the home is contrary/not contrary to the safety of the child.

9. ☐ The Agency shall not divulge to the parents of the child the location of the placement of the child unless the Agency believes it is in the interest of the child to do so.

10. ☐ The parents of the child are directed to comply with any request from the Office of Domestic Relations so that an appropriate order of support may be entered. Any order of support shall commence as of the date of placement.

11. ✓ Both parents are directed to advise the Lancaster County Children and Youth Social Service Agency within 24 hours of any change in their current residence and telephone numbers.

12. ✓ The Agency is authorized to consent to medical/surgical/dental treatment of the juvenile. The Agency shall notify the parent(s) of the juvenile of any proposed treatment if possible, but treatment shall not be withheld pending such notification.

13. ✓ The Guardian Ad-litem shall act as the educational surrogate for the juvenile.

- 4 -

14. ☐ The Court directs the Office of Domestic Relations to perform genetic testing to determine if _____ is the natural father of said juvenile. No acknowledgment of paternity is to be accepted. The testing should be performed as soon as possible.

15. ☐ Father appeared for the hearing without counsel.

16. ☐ Mother appeared for the hearing without counsel.

17. ☐ The Court hereby advises ☐ Father  ☐ Mother to obtain counsel well in advance of the next hearing in this matter if he/she desires to have counsel. He/She may apply to Bail Administration to determine if he/she qualifies for court-appointed counsel. If he/she does not qualify for court-appointed counsel, he/she must hire counsel.

18. ☐ Other _____.

19. ☐ Good cause exists for the child not being present for the proceeding, to wit:_____
_____

Present at the hearing: ☐ Mother  ☐ Father  ☐ Father2  ☐ Other: _____

**Date of Next Hearing: April 18, 2017 at 8:30 AM in CR#6.**

Dated: _____4/13/17_____

BY THE COURT:

_____
Judge

ATTEST:

Copies to:

| | | |
|---|---|---|
| ☑ | Guardian Ad-litem: | Jeffrey Gonick |
| ☑ | Mother's Attorney: | David Peiffer |
| ☑ | Father's Attorney: | Allison Wright |
| ☐ | Other Attorney: | |
| ☑ | Agency (2): | Courtney Ross |
| ☑ | Mother: | K██ U██ |
| ☑ | Father: | R██ U██ |
| ☐ | Other: | |
| ☑ | Agency Attorney: | Laura McGarry |

Served by TR
4-13-17

- 5 -

<u>NOTICE OF HEARING</u>

To:     Mother:   K███ U███         Mother's Attorney:
          Father:   R███ U███         Father's Attorney:

You are hereby notified that there will be an adjudication/disposition/court review hearing in the above matter held at the Lancaster County Courthouse, 50 North Duke Street, Lancaster, Pennsylvania on May 2, 2017 at 8:30 AM in Courtroom #6.

YOU ARE HEREBY SUMMONED AND DIRECTED TO APPEAR AT THE ABOVE DATE, TIME, AND PLACE OF THE HEARING. IF YOU FAIL TO APPEAR, THE COURT MAY ISSUE A BENCH WARRANT FOR YOUR ARREST.

YOU HAVE THE RIGHT TO BE REPRESENTED BY AN ATTORNEY AT THIS HEARING. IF YOU WANT A COURT APPOINTED ATTORNEY, YOU ARE REQUIRED TO APPLY AT THE OFFICE OF BAIL ADMINISTRATION. IF YOU ALREADY HAVE QUALIFIED FOR A COURT APPOINTED ATTORNEY, YOU ARE REQUIRED TO CONTACT THE ATTORNEY AND COOPERATE WITH YOUR ATTORNEY; IF YOU FAIL TO DO SO, THE APPOINTMENT WILL BE VACATED. THEREAFTER, YOU WILL NEED TO REAPPLY AT THE OFFICE OF BAIL ADMINISTRATION OR HIRE YOUR OWN ATTORNEY. IF YOU ARE NOT ELIGIBLE FOR A COURT APPOINTED ATTORNEY AND DO NOT MAKE ARRANGEMENTS FOR YOUR OWN ATTORNEY, THE COURT WILL NOT CONTINUE THE HEARING TO ALLOW YOU MORE TIME TO DO SO. THE HEARING WILL BE HELD WHICH MAY RESULT IN AN ORDER BEING ENTERED WHICH MIGHT AFFECT YOUR RIGHTS AS A PARENT OF THE ABOVE JUVENILE.

Date: _____4/13/17_____      _____ J.

ATTEST:

(To be served by Children and Youth)

LANCASTER COUNTY, PA

2017 APR 13 AM 11: 23

CLERK OF COURTS

Served by TR
4-13-17

- 7 -

On April 18, 2017, Judge Hoberg conducted the shelter care hearing. Due to Parents' failure to attend the hearing, the court permitted counsel for Parents to withdraw. On May 1, 2017, Judge Hoberg entered a shelter care order finding it was not in the best interest of Child to return to the Parents' home, legal and physical custody should remain with the Agency, and visitation should continue as scheduled, subject to a negative drug screen. *See* Shelter Care Order, 5/1/17. The order included an attachment, which notified Parents that their respective attorneys had withdrawn their appearances due to their failure to appear at the hearing. *Id.* Specifically, the attachment included a notation indicating that Father was served individually. *Id.* The attachment further directed Parents to make an appointment to re-qualify for counsel for their next scheduled hearing if they wished to have counsel represent them at said hearing. *Id.* We have included the order and attachment below.

# SHELTER CARE ORDER

## Attendance

| Attendee Name | Attendee Role | Attendance Type |
|---|---|---|
| Gonick, Jeffrey | Guardian Ad Litem | In Person |
| Lancaster County Children and Youth Agency | Children and Youth Services | In Person |
| U███, J███ | Sibling | Did Not Attend |
| U███, S███ | Child | Did Not Attend |

Additional Attendees: David Natan Esq. appeared on behalf of the Agency. K███ U███, mother, and R███ U███, father, did not appear at the hearing.

AND NOW, this 13th day of April, 2017, after a shelter care hearing pursuant to 42 Pa.C.S.A. § 6332, this court makes the following findings:

### FINDINGS

Sufficient evidence was presented to prove that continuation or return of the child to the home of K███ and R███ U███ Relationship: Mother and Father is not in the best interest of the child. Neither parent attended the hearing.

The request by the County Children and Youth Services is hereby granted.

### REASONABLE EFFORTS TO COMPLY WITH FAMILY FINDING REQUIREMENTS

The Agency has satisfied the requirements of Pa.R.J.C.P.1149 regarding family finding.

### REASONABLE EFFORTS TO PREVENT REMOVAL FROM HOME

Further, the Court hereby finds that to allow this child to remain in the home would be contrary to the child's welfare, and that Reasonable Efforts were made by the County Children and Youth Agency to prevent or eliminate the need for removal of this child from the home.

### ORDER - Based upon the above findings, IT IS ORDERED THAT:

Legal Custody of the Child shall remain with the Lancaster County Children and Youth and Social Service Agency.

Physical Custody of the Child shall remain with the Lancaster County Children and Youth and Social Service Agency.

Placement of the Child shall remain in Foster Care (Kinship). The Child's placement is the least restrictive placement that meets the needs of the child and there is no less restrictive alternative available.

### EDUCATION/EVALUATIONS

An educational decision maker shall be appointed pursuant to Rule 1147. Specify, if available: Jeffrey Gonick Esq.

### FAMILY FINDING

The court orders the Agency to engage and continue in family finding until further order of court.

### FINDINGS/ORDERS

THE COURT FURTHER FINDS: The child is safe and placed with two of his siblings in a kinship resource home.

### NEXT SCHEDULED COURT DATE(S)

Next Scheduled Court Date: 5/2/2017 at 8:30am - Adjudication and Disposition Hearing - Lancaster County Courthouse - Courtroom TBD.

Such disposition having been determined to be best suited to the protection and physical, mental and moral welfare of the child.

BY THE COURT:

4/24/2017 _____
Judge Jay J. Hoberg

2017 MAY -1 AM 9: 22
CLERK OF COURTS
LANCASTER COUNTY, PA

Date of Hearing: 4/18/17

## ATTACHMENT

On the basis of the preceding determinations, it is hereby further ordered that:

☑ The child shall continue to be placed in the physical custody of:
  ☐ mother    ☐ father    ☒ Agency    ☐ other_____
  ☐ subject to the following conditions:_____

☐ Legal custody is released to: ☐ Mother ☐ Father ☐ other_____
  ☐ subject to the following conditions:_____

☑ Visitation between the parents and child:
  ☒ Shall continue as currently scheduled ☒ Mother    ☒ Father
  ☐ Shall/May be increased           ☐ Mother    ☐ Father
  ☐ Shall/May be decreased           ☐ Mother    ☐ Father
  ☐ Shall be terminated/suspended    ☐ Mother    ☐ Father
  A party whose visits are terminated/suspended may petition the Court to have visits reinstated.
  ☒ Other Visitation will be bi-weekly Subject To Valid + Negative Drug Screen

☑ The Agency is authorized to consent to medical/surgical/dental treatment of the child. The Agency shall notify the parent(s) of the child of any proposed treatment, if possible, but treatment shall not be withheld pending such notification.

☑ The Guardian Ad-Litem shall act as the educational surrogate for the child.

☑ Continuation in the home is contrary to the welfare/best interests of the child. The Court finds that reasonable efforts have been made to maintain the child in his/her home in order to prevent the removal of the child from the home.

☐ The parents of the child are directed to comply with any request from the Office of Domestic Relations so that an appropriate order of support may be entered. Any order of support shall commence as of the date of placement.

☑ Both parents are directed to advise the Lancaster County Children and Youth Social Service Agency within twenty-four (24) hours of any changes in the current residence and telephone numbers.

☐ Other:_____

Good cause exists for the child NOT being present for this proceeding exists, to wit: _School__

Present at the hearing:    ☐ Mother    ☐ Father    ☐ Other_____

TO THE PARENT(S): Attorney(s) _David Peiffer Esq + Allison Wright Esq._
withdrew his/her/their appearance(s) of Father/Mother/Other because he/she did not appear for the hearing. Father/Mother/Other is directed to make an appointment and re-qualify for counsel at the Office of Bail Administration for the next hearing scheduled in this matter if he/she wishes to have counsel represent him/her at said hearing.

Date of Next Hearing: _5/2/2017_ at _8:30_ ☑ A.M. or P.M.

Copies to: All Parties Serviced 5/1/17 a/
☑ Guardian Ad Litem: Jeffrey Gonick  OB
☑ Mother's Attorney: David Peiffer  OB
☑ Father's Attorney: H. Allison Wright  OB
☐ Other Attorney:
☑ Agency (2): Courtney Ross  AOB

☑ Mother: K███ U███  FCM
☑ Father: R███ U███  FCM
☐ Other:
☑ Agency Attorney: Laura McGarry  AOB
☐ CASA (Court Appointed Special Advocate):
☐ Child over 12:

On May 2, 2017, the Honorable Thomas B. Sponaugle conducted a dependency hearing. Parents failed to attend, and no counsel appeared on Parents' behalf. At the hearing, Ross testified as to the averments in the dependency petition. *See* N.T., 5/2/17, at 5-16. Ross further testified that the "Agency continue[d] to have concerns with substance abuse as this has been an ongoing issue for the family," Child's hygiene, and Parents' inability to provide for Child's needs or maintain a stable environment. *Id.* at 8. She stated that there were also some concerns that Child could have a mental health issue, but that Parents did not address those concerns. *Id.* at 11-12.

Ross stated that there were aggravating circumstances due to Parents' parental rights being involuntarily terminated as to J.U.2. *Id.* at 5, 9. She explained that Parents were given a child permanency plan as to J.U.1 and J.U.2 and that they did not complete the objectives. *Id.* 8-9. She added that the concerns that led to the placement of J.U.1 and J.U.2 had not been alleviated. *Id.* at 11. Ross indicated that she attempted to discuss the permanency plan for Child with Parents but could not reach them by phone or in person at their apartment. *Id.* at 9. She testified that she was able to speak with Parents on May 1, 2017, the day before the hearing, when she personally served them with the notice of the hearing and they indicated that "they would come early to discuss the case with me." *Id.* at 9-10.

Ross further testified that during the time of the Agency's involvement with J.U.1 and J.U.2, Parents told the Agency that Child lived with maternal grandmother. *Id.* at 10. She stated that had the Agency known that Child

was actually residing with Parents it would have sought to place Child at the same time as it placed J.U.1 and J.U.2. *Id.* at 11.

Finally, Ross stated that Child is adjusting well in the new resource home with maternal aunt. *Id.* at 15. Child is very excited to have his own bed and his own space. *Id.* Child "also had indicated to me that he did not feel safe going outside of where he was living with [P]arents, so he enjoys being able to play in the driveway and being able to play in a yard." *Id.* Currently, Child is placed with his two youngest siblings and has visitation with the rest of his siblings as maternal grandmother and aunt have a close relationship. *Id.* at 14.

On May 4, 2017, Judge Sponaugle entered an order adjudicating Child dependent, maintaining his placement in foster care, setting his permanency goal as adoption, and terminating Father's visitation.[4] *See* Order, Adjudication and Disposition, 5/4/17. Judge Sponaugle entered a separate order that same day, finding aggravated circumstances due to the involuntary termination of Parents' parental rights to J.U.2., and directing that no efforts be made to reunify the family. *See* Order, Aggravated Circumstances, 5/4/17.

_____

[4] The order set a concurrent goal of placement with a permanent legal custodian. Order, Adjudication and Disposition, 5/4/17.

Father obtained court-appointed counsel[5] and, on June 1, 2017, filed a single timely notice of appeal from both orders and a Pa.R.A.P. 1925(a)(2)(i) statement.

This Court granted *en banc* consideration in this matter to address whether the trial court properly notified Father of his right to representation during a dependency hearing and withdrew this Court's prior memorandum. ***See*** Order, 2/12/18. Accordingly, we address this issue before resolving the merits of Father's underlying appeal.

The Agency claims that Section 6337 of the Juvenile Act requires the trial court to colloquy a party and appoint counsel, **if the party appears at a hearing**. ***See*** Agency's Brief at Ex. A, at 1. The Agency further claims that Rule 1151(E) of the Pennsylvania Rules of Juvenile Court Proceedings requires that the trial court appoint counsel to a party **if counsel is requested. *Id.*** The Agency reasons that "[i]t is evident from the text of the applicable statu[t]es and rules that a party must appear at the hearing to trigger the court's affirmative duty to notify the party of their right to counsel and colloquy the party as to whether they wish to be represented." ***Id.*** at Ex. A, at 2.

Finally, the Agency claims that the "panel's decision negatively impacts public policy and frustrates the purpose of federal and state statutes dictating timely permanency for children in foster care." ***Id.*** at Ex. A, at 5-6. It states

---

[5] The court re-appointed H. Allison Wright, Esq., to represent Father on appeal.

that it is common that parents fail to appear for hearings despite receiving proper notice. *Id.* Further, the Agency asserts that requiring the court to continue hearings until the parents appear in person and then inquire into their desire to have counsel will significantly delay the completion of six-month permanency hearings required by 42 Pa.C.S. § 6351(e).[6] *Id.*

Section 6337 of the Juvenile Act recognizes that "there exists in parents a right to counsel in dependency cases," *In re N.B.*, 817 A.2d 530, 535 (Pa. Super. 2003) (citation omitted), and provides:

> [A] party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him. If a party other than a child appears at a hearing without counsel the court shall ascertain whether he knows of his right thereto and to be provided with counsel by the court if applicable. The court may continue the proceeding to enable a party to obtain counsel.

42 Pa.C.S. § 6337.

Pennsylvania Rules of Juvenile Court Procedure address the procedural process in exercising the right to counsel. In construing the Pennsylvania Rules of Juvenile Court Procedure, the object of their interpretation is "to effectuate the purposes stated in the Juvenile Act, 42 Pa.C.S. § 6301(b)."[7]

---

[6] Father did not file a supplemental brief addressing the issue for which this Court granted reargument.

[7] Section 6301(b) sets forth the following purposes:

Pa.R.J.C.P. 1101(C). Further, these rules "shall be construed to secure uniformity and simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay." Pa.R.J.C.P. 1101(B). Rule 1101(D) provides that "[t]o the extent practicable, these rules shall be

---

(1) To preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained.

(1.1) To provide for the care, protection, safety and wholesome mental and physical development of children coming within the provisions of this chapter.

* * *

(3) To achieve the foregoing purposes in a family environment whenever possible, separating the child from parents only when necessary for his welfare, safety or health or in the interests of public safety, by doing all of the following:

(i) employing evidence-based practices whenever possible and, in the case of a delinquent child, by using the least restrictive intervention that is consistent with the protection of the community, the imposition of accountability for offenses committed and the rehabilitation, supervision and treatment needs of the child; and

(ii) imposing confinement only if necessary and for the minimum amount of time that is consistent with the purposes under paragraphs (1), (1.1) and (2).

(4) To provide means through which the provisions of this chapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.

42 Pa.C.S. § 6301(b).

construed in consonance with the rules of statutory construction." Pa.R.J.C.P. 1101(D).[8]

With those principles in mind, we state Pennsylvania Rule of Juvenile Court Procedure 1151(E):

> **E. Counsel for other parties.  If counsel does not enter an appearance for a party**, the court shall inform the party of the right to counsel prior to any proceeding.  **If counsel is requested by a party in any case**, the court shall assign counsel for the party if the party is without financial resources or otherwise unable to employ counsel.  Counsel shall be appointed prior to the first court proceeding.

Pa.R.J.C.P. 1151(E) (emphases added).  The comment to Rule 1151(E) states:

> Pursuant to paragraph (E), the court is to inform all parties of the right to counsel **if they appear at a hearing without counsel.** If a party is without financial resources or otherwise unable to employ counsel, the court is to appoint counsel prior to the proceeding.  Because of the nature of the proceedings, it is extremely important that every "guardian" has an attorney.

---

[8] Regarding statutory construction, the Pennsylvania Supreme Court has stated that

> the plain language of a statute is in general the best indication of the legislative intent that gave rise to the statute.  When the language is clear, explicit, and free from any ambiguity, we discern intent from the language alone, and not from the arguments based on legislative history or "spirit" of the statute.  We must construe words and phrases in the statute according to their common and approved usage.  We also must construe a statute in such a way as to give effect to all its provisions, if possible, thereby avoiding the need to label any provision as mere surplusage.

*C.B. v. J.B.*, 65 A.3d 946, 951 (Pa. Super. 2013) (citation omitted).

> Therefore, the court is to encourage the child's guardian to obtain counsel. Pursuant to [Pa.R.J.C.P.] 1120, a guardian is any parent, custodian, or other person who has legal custody of a child, or person designated by the court to be a temporary guardian for purposes of a proceeding.

Pa.R.J.C.P. 1151 cmt. (emphasis added).[9]

Rule 1152(B), which discusses waiver of counsel, provides in relevant part that "a party may waive the right to counsel if: (1) the waiver is knowingly, intelligently, and voluntarily made; and (2) the court conducts a colloquy with the party on the record."[10] Pa.R.J.C.P. 1152(B).

In sum, it is undisputed that Rule 1151(E) mandates that a parent be appointed counsel prior to the first court proceeding. Pa.R.J.C.P. 1151(E). The remainder of the Rule centers on the notice of a party's right to counsel where counsel has not entered an appearance on that party's behalf. **Id.** Where counsel has not entered an appearance or where a party appears at a hearing unrepresented, the court must provide notice to the party of his or her right to counsel. **Id.** Notably, nowhere in Rule 1151(E) does it require that proper notice must be given in person. **See id.**

_____

[9] "We are cognizant that explanatory comments express the opinion of the rules drafting committee and therefore are not binding." **Estate of Paterno v. National Collegiate Athletic Assoc.**, 168 A.3d 187, 200 n.13 (Pa. Super. 2017) (citation omitted).

[10] We note that Rule 1152(B) governs waiver of counsel, in which a party "voluntary[il]y relinquish[es] a legal right or advantage." **See** Waiver, Black's Law Dictionary, 1717 (9th ed. 2009). It does not concern situations when a party fails to exercise their right to counsel, _e.g._, attending a hearing and applying for counsel, as in this case.

Here, the court appointed counsel for Father prior to the first hearing as mandated by Rule 1151(E). **See** Order, 4/12/17; **see also** Pa.R.J.C.P. 1101(E). The notice attached to the April 12, 2017 order notified Father that counsel had been appointed and that it was Father's responsibility to contact counsel. Notice, 4/12/17. On April 13, 2017, when the trial court rescheduled the hearing, the court notified Father a second time of his right to counsel, and explained that Father was required to contact and cooperate with the attorney and that failure to do so would result in the appointment being vacated. Notice of Hr'g, 4/13/17.

Prior to the scheduled May 2, 2017 dependency hearing, as no counsel had entered an appearance on Father's behalf, the court sent a third notice to Father pursuant to Rule 1151(E). **See** Shelter Care Order, 5/1/17; **see also** Pa.R.J.C.P. 1151(E). The court notified Father that counsel had withdrawn her appearance due to Father's failure to appear at the April 18, 2017 shelter care hearing. Shelter Care Order, 5/1/17. The court further notified Father that should he wish to be represented by counsel, he had to make an appointment and re-qualify for counsel.[11] **Id.** Accordingly, we find that the court complied with Rule 1151(E) by appointing counsel prior to the first court proceeding and by providing notice to Father of his right to representation.

_____

[11] At the May 2, 2017 dependency hearing, Ross testified that in addition to the written notice, she gave Parents oral notice of the hearing. **See** N.T., 5/2/17, at 8, 10.

*See* Pa.R.J.C.P. 1151(E); *see also* Notice, 4/12/17, Notice of Hr'g, 4/13/17, Shelter Care Order, 5/1/17.

Moreover, we must construe Rule 1151(E) in accordance with the Pennsylvania Rules of Juvenile Court Procedure and statutes setting forth the time periods for conducting hearings. Rule 1404(A) provides that "[i]f a child has been removed from the home, an adjudicatory hearing shall be held within ten days of the filing of the petition." Pa.R.J.C.P. 1404(A). Rule 1409(B) states that "[i]f a child is removed from the home, the court shall enter an adjudication of dependency within seven days of the adjudicatory hearing . . . ." Pa.R.J.C.P. 1409(B). Pursuant to Rule 1510, "[i]f the child has been removed from the home, the dispositional hearing shall be held no later than twenty days after the findings on the petition . . . ." Pa.R.J.C.P. 1510. Further, 42 Pa.C.S. § 6351(e) governing permanency hearings provides, in pertinent part, that the court shall conduct permanency hearings "[w]ithin six months of[] the date of the child's removal from the child's parent, guardian or custodian" or "[w]ithin 30 days of[] an adjudication of dependency at which the court determined that aggravated circumstances exist . . . ." 42 Pa.C.S. § 6351(e)(3).

These rules clearly emphasize the urgency of deciding these cases promptly to advance the best interests of the minor. *See* Pa.R.J.C.P. 1404(A), 1409(B), 1510; *see also* 42 Pa.C.S. § 6351(e)(3). Continuing hearings until a parent decides to be present at a hearing simply goes against the Rules of Juvenile Court Procedure, which mandate that these rules be construed to

eliminate unjustifiable delay. **See** Pa.R.J.C.P. 1101(B). Permitting a parent an indefinite period of time to appear in court would render the rules governing prompt hearings meaningless and would force a child to remain in a state of limbo until his or her parent decides to make an appearance in court. **See** Pa.R.J.C.P. 1404(A), 1409(B), 1510; **see also** 42 Pa.C.S. § 6351(e)(3).

We agree with the Agency that the Rules of Juvenile Court Procedure do not support the proposition that a court must wait indefinitely until the parents of a child decide to appear in court. In the instant case, the provisions of Rule 1152, governing the waiver of counsel do not apply because the central inquiry on these facts is not waiver, but whether Father was aware of the hearing, and of his right to counsel at the hearing; and whether he applied for counsel.[12] Father does not dispute that he received notice of the dependency hearing.[13] In fact, there is sufficient evidence of record that Father was aware of the hearing. **See** Shelter Care Order, 5/1/17; **see also** N.T., 5/2/17, at 9-10. Further, the record established that the notice of the hearing provided Father with information as to the office he was required to contact to re-qualify for counsel. **See** Shelter Care Order, 5/1/17. Father, however, despite receiving proper notice and indicating that he would come prior to the hearing to discuss the case with Ross, **see** N.T., 5/2/17, at 10, voluntarily chose not to attend the hearing or re-apply for counsel.

---

[12] **See supra** note 10.

[13] We note that Father does not dispute receiving notice to any of the proceedings in this matter.

Accordingly, we hold that where a parent has been given proper notice of an adjudicatory hearing and of the parent's right to counsel at such hearing, yet fails to attend or apply for counsel, the juvenile court need not delay the proceedings further to conduct an in-person colloquy of a parent's right to counsel. *See* Pa.R.J.C.P. 1101(B), 1151(E); *cf.* Pa.R.J.C.P. 1128 (providing that "[t]he court may proceed in the absence of a party upon good cause shown"). Therefore, the court did not err in failing to conduct an in-person colloquy regarding Father's right to counsel.

We now address Father's remaining claims. Father raises the following issues on appeal, which we have reordered below:

1. Whether the [trial c]ourt erred in concluding that the evidence clearly and convincingly established that [C]hild is a dependent child pursuant to the Pennsylvania Juvenile Act at 42 Pa.C.S. § 6302[.]

2. Whether the [trial c]ourt erred in concluding that it is in the best interest of [C]hild to be removed from the home of Mother and Father[.]

3. Whether the [trial c]ourt erred in terminating visitation for Father[.]

4. Whether Father should be granted another hearing to determine whether he should be granted visitation of [C]hild and whether he should be given a [c]hild [p]ermanency [p]lan with the goal of reunification with [C]hild[.]

5. Whether the [trial c]ourt erred in entering an Aggravated Circumstances Order against Father and concluding that no efforts should be made to preserve the family and reunify [C]hild with Father because his parental rights had been involuntarily terminated with respect to another child[.]

Father's Brief at 10.

Father first claims that there was no testimony regarding his substance abuse. *Id.* at 17. He further claims that he tested negative for illegal substances. *Id.* He argues that Ross's testimony that Child "looked like he was wearing unclean clothes and 'presented with an odor'" should not be a basis for finding Child dependent. *Id.* at 18. Father notes that there were no allegations that Child was not attending school on a regular basis, that Child had been abused, or that Father posed a risk to Child's health, safety, or welfare. *Id.* at 18-19. Father contends that Parents and Child sharing a double mattress on the floor of an unclean apartment alone does not establish Child's dependency. *Id.* at 19. Instead of taking custody, he argues that the Agency should have presented Parents with a family service plan. *Id.*[14]

In dependency cases, our standard of review requires us to "accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require [us] to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion." *In re E.B.*, 83 A.3d 426, 430 (Pa. Super. 2013) (citing *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010)).

Section 6302(1) of the Juvenile Act defines a "dependent child" as one who

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination

---

[14] Mother's arguments in her brief are duplicative of Father's. *See* Appellee, K.U., Mother's Brief at 1-4.

that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302(1). Further, we have explained that "[t]he question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." *E.B.*, 83 A.3d at 431 (citation omitted). "The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *Id.* (citation omitted).

Here, the juvenile court found clear and convincing evidence that Child should be adjudicated dependent, and a review of the record supports this finding. *See* N.T., 5/2/17, at 16; Order, Adjudication and Disposition, 5/4/17. Child consistently attended school with an odor and unclean clothes. *See* N.T., 5/2/17, at 8. Child was sleeping on the floor, on a double mattress, which he shared with Parents. *Id.* The apartment was unclean and Child felt unsafe going outside. *Id.* at 8, 15. The Agency had a continuing concern with substance abuse in the family. *Id.* at 8. Although Father's drug screen was negative, Mother, who lives in the residence, tested positive.[15] *Id.* at 7-8.

---

[15] It is noteworthy that Father refused a random drug screen on a prior unannounced home visit. *See* N.T., 5/2/17, at 6.

The Agency also had concerns with Child's mental health and behavior, which Parents never addressed. *Id.* at 11-12.

Further, at all times while the Agency was involved with Parents as to J.U.1 and J.U.2, Parents indicated that Child resided with maternal grandmother. *Id.* at 10. Due to this false representation, the Agency did not seek placement of Child at that time. *Id.* at 11. The Agency testified that Parents did not complete the objectives of the permanency plan as to J.U.1 and J.U.2 and that the concerns leading to the placement and termination of the other children had not been alleviated. *Id.* Child is one of seven children, and all of his siblings have been in foster care since their births or for the majority of their lives. *Id.* at 5, 13.

Moreover, Father has shown a complete lack of interest for Child. *See id.* He failed to visit Child since Child's placement and did not attend the shelter care hearing, nor the dependency hearing. *See id.* Father also did not present any evidence to rebut the allegations made in the petition or the testimony presented at the dependency hearing. *See* Trial Ct. Op., 6/12/17, at 3 (unpaginated).

The trial court found that the evidence presented, in addition to Parents' history with the Agency, makes it evident that Father is unable to provide for Child's needs or maintain a stable environment. *See id.* at 8; *see also In re J.J.*, 69 A.3d 724, 731 (Pa. Super. 2013) (finding children were dependent where Father did not rebut the averments in the dependency petition and demonstrated a lack of commitment by not attending the dependency hearing

or visiting children). Therefore, the juvenile court did not abuse its discretion in finding there is clear and convincing evidence that Child is without proper parental care and control, as well as holding such care and control are not immediately available. *See E.B.*, 83 A.3d at 431.

In Father's second, third, and fourth issues, he argues that the court erred in concluding that it was in the best interest of Child to maintain Child's placement in foster care. Father's Brief at 20-21. He claims that because he did not attend the hearing, the court did not know how long Child had been residing with Parents, whether there was a bond between Child and Parents, or what impact Child would suffer should visitation be terminated. *Id.* Father maintains that rather than "summarily" terminating his visitation with Child, the court could have "scheduled the minimum bi-weekly visits on the condition that Father would need to call the Agency in advance and confirm each visit. The [c]ourt could also have required both parents to submit to drug screens before each visit." *Id.* at 23. Father asks that we vacate the trial court's order or, in the alternative, grant him a new hearing to "give him the opportunity to testify and state his position in regards to the allegations" made by the Agency in its dependency petition. *Id.*

As discussed above, Father received written notice of the court proceedings at least three times. *See* Notice, 4/12/17; Notice of Hearing, 4/13/17; Shelter Care Order, 5/1/17. The Agency testified that it also gave Father oral notice of the proceedings. N.T., 5/2/17, at 3, 10. Despite multiple notices, Father chose not to attend and "state his position."

As for visitation, the Agency attempted to schedule visits numerous times, but Father failed to visit Child or contact the Agency to explain why he could not visit Child. *Id.* at 13.

Since removal from the home, Child has been adjusting well. *Id.* at 15. He has his own bed and space, is not afraid to go outside and play, lives with his two youngest siblings, and has constant visitation with his older siblings. *Id* at 14. Child is being provided with a psychiatric evaluation, before and after school programs, and has dental and physical exams scheduled. *Id.* at 12-13. Therefore, we conclude that the juvenile court did not abuse its discretion in finding that it was in Child's best interest to remove Child from the home, and terminate visitation with Father. Trial Ct. Op., 6/12/17, at 3. Further, we find no reason to grant a new hearing in this case. Father's new-found readiness to attend court proceedings and visit Child is untimely. *See* Pa.R.J.C.P. 1101(B); *see also J.J.*, 69 A.3d at 731 ("[A]lthough preserving the unity of the family is a purpose of the [Juvenile] Act, another vital purpose is to 'provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter.'" (citing 42 Pa.C.S. § 6301(b)(1.1)).

Accordingly, we affirm the juvenile court's orders adjudicating Child dependent, maintaining Child's placement in foster care, setting Child's permanency goal to adoption, and terminating Father's visitation.

Lastly, Father claims that the trial court erred in finding that aggravated circumstances existed. Father's Brief at 21-22. Father claims that because

- 26 -

he did not attend the hearing, the trial court did not hear about his individual situation. *Id.* at 21. He contends that reunification with a parent is the most desirable goal and, thus, the court erred in not providing him with the opportunity to work on a child permanency plan with the goal of reunification with Child. *Id.* at 22.

Section 6341(c.1) of the Juvenile Act states that if the court makes a finding of dependency,

> the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home[,] or to preserve and reunify the family[,] shall be made or continue to be made[,] and schedule a hearing as required in section 6351(e)(3) (relating to disposition of dependent child).

42 Pa.C.S. § 6341(c.1). Further, a finding of aggravated circumstances may be made where "[t]he parental rights of the parent have been involuntarily terminated with respect to a child of the parent." 42 Pa.C.S. § 6302(5).

Moreover, the Juvenile Act provides that where there has been a finding of aggravated circumstances, it is within the juvenile court's discretion to "determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made." *See In re A.H.*, 763 A.2d 873, 878 (Pa. Super. 2000) (internal quotation marks omitted); *see also In the Interest of Lilley*, 719 A.2d 327, 333 (Pa. Super. 1998). "[T]he focus of dependency proceedings [is] on the child. Safety, permanency, and the well-

being of the child must take precedence over all other considerations, including the rights of the parents." ***In re R.P.***, 957 A.2d 1205, 1220 (Pa. Super. 2008) (citation omitted).

Here, we find no error in the juvenile court's finding that aggravated circumstances existed as Father's parental rights had been involuntarily terminated as to another child, J.U.2. ***See*** Order, Aggravated Circumstances, 5/4/17; ***see also*** 42 Pa.C.S. § 6302(5). We further find no error in the court's finding that no reasonable efforts should be made to reunify the family because it was not in Child's best interest to remain in the home for the reasons set forth above. ***See*** Order, Adjudication and Disposition, 5/4/17, at 1; ***see also A.H.***, 763 A.2d at 878. We conclude the trial court did not abuse its discretion in finding that aggravated circumstances existed and that no reasonable efforts to reunify the family should be made. ***See id.***

Orders affirmed.

President Judge Gantman, President Judge Emeritus Bender, Judge Panella, Judge Lazarus, Judge Dubow and Judge McLaughlin join the opinion.

Judge Dubow files a concurring statement in which President Judge Emeritus Bender, Judge Panella, Judge Lazarus and Judge McLaughlin join.

Judge Stabile files a dissenting opinion in which Judge Shogan joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2019