J-S53001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF: M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: Y.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 999 EDA 2019 |

Appeal from the Order Entered March 4, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-000145-2019,
CP-51-DP-0000141-2019

| | | |
|---|---|---|
| IN THE MATTER OF: M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: Y.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1000 EDA 2019 |

Appeal from the Order Entered March 4, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-000145-2019,
CP-51-DP-0000142-2019

| | | |
|---|---|---|
| IN THE MATTER OF: M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: Y.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1001 EDA 2019 |

Appeal from the Order Entered March 4, 2019
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  51-FN-000145-2019,

CP-51-DP-0000146-2019

BEFORE:  OLSON, J., STABILE, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 03, 2019**

Appellant Y.H. (Mother), appeals from the order entered on March 4, 2019, adjudicating dependent[1] her three children, M.H. (female born June 2006) (Child 1), M.H. (female born May 2010) (Child 2), and M.H. (male born December 2016) (Child 3) (collectively, Children).[2]  We affirm.

The trial court summarized the facts and procedural history of this case as follows:

> This family became involved with the Department of Human Services (DHS) on January 9, 2019, when DHS received a General Protective Services (GPS) report alleging that Mother had been using marijuana and phencyclidine (PCP); Mother admitted to Children's school staff that she actively uses marijuana; Mother had been exhibiting paranoid behavior; Mother had been hitting Child 1 and pulling her hair; Mother tried to make Child 1 fight with neighbors; Mother made Child 1 stay home from school to watch Child 3; Mother often left Children home alone for unknown periods of time; Maternal Uncle attempted to seek inpatient mental health treatment for Mother, but Mother refused treatment; Children were residing in Maternal Grandmother's home; Mother's whereabouts were unknown at the time of the report; the family home was dirty and infested with cockroaches; Child 1 receives emotional support services at school and has exhibited combative and physically aggressive behavior toward school staff, which has increased over time; Maternal Grandmother is afraid of Mother due to Mother's behavior;

---

[1] Pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6302, *et seq*.

[2]  Each child has a different father.  One father was deceased at the time of the adjudication hearing.  N.T., 3/4/2019, at 11.  The other two fathers were incarcerated and were not served with notice of the adjudication hearing.  ***Id.*** at 10-13.   They are not parties to the current appeal.

Maternal Grandmother did not want DHS involved with the family; on January 2, 2019, Mother's speech with school staff was unfocused, paranoid, and tangential. [The GPS] report [was] pending determination. On the same day, DHS went to the home of the Maternal Grandmother, who denied the allegations. Maternal Grandmother admitted that Mother had mental health problems but denied that Mother used drugs. Maternal Grandmother stated that she was not afraid of Mother and that Child [1] and Child 2 had been residing with her for the last two months. Child 1 and Child 2 also denied the allegations. Maternal Grandmother stated that Mother had been evicted from her home for an unknown reason and that she lacked stable housing. DHS left a letter for Mother requesting that she contact DHS.

On January 10, 2019, Mother contacted DHS and confirmed receipt of the letter that was left for Mother with Maternal Grandmother. DHS met with Mother later that day, and Mother denied the allegations. Mother stated that her landlord illegally evicted her in retaliation because she complained about bedbugs in the home. Mother also admitted that she had an outstanding warrant for her arrest for failure to pay a parking ticket. Mother stated that she received mobile therapy for Attention Deficit Hyperactivity (ADHD) and that she receives Supplemental Security Income (SSI) for Child 1. Mother admitted that she had threatened to cancel Child 1's Individualized Education Plan (IEP) meeting scheduled for January 18, 2019. Mother claimed that she was staying at the Salvation Army shelter, but could not provide any documentation. Mother cancelled Child 1's scheduled IEP meeting for January 18, 2019. Mother also refused to sign a safety plan allowing Children to reside with Maternal Grandmother because she lacked stable housing. On January 25, 2019, DHS obtained an [o]rder of [p]rotective [custody] (OPC) for Child 1 and Child 2, who were subsequently placed with Maternal Aunt. Initially, Mother refused to disclose the whereabouts of Child 3 to DHS. When Mother agreed to meet with DHS, she arrived but did not have Child 3 in her care. Mother later disclosed Child 3's location on that same day. DHS subsequently obtained an OPC for Child 3, who was placed with Paternal Aunt. On January 26, 2019, a shelter care hearing was held for Children. The trial court lifted the OPC and the temporary commitment to DHS was ordered to stand.

On February 1, 2019, DHS filed a dependency petition for Children. On March 4, 2019, an adjudicatory hearing was held for Children. At this hearing, testimony was given by the DHS social

worker, the Community Umbrella Agency (CUA) supervisor, and Mother. After all testimony was given, the trial court found clear and convincing evidence to adjudicate Children dependent. Children were fully committed to DHS based on the finding of [Mother's] present inability [to care for the Children]. The trial court referred Mother, Child 1, and Child 2 to Behavioral Health Services (BHS) for consultation and/or evaluation for family therapy, and such therapy to be implemented, when appropriate. Mother was also referred for a smoking cessation program, a parenting capacity evaluation (PCE), parenting, housing, domestic violence, and to the clinical evaluation unit (CEU) for a forthwith drug screen, assessment, and three random drug screens prior to the next court date. Mother was ordered to provide documentation verifying proof of her employment. Mother [was] permitted to attend Children's medical appointments, if Mother's behavior [were] appropriate. Mother was also ordered to attend supervised visits with Children at the agency for two hours within line-of-sight and line-of-hearing. Mother [was] to have no other contact with Children outside of the scheduled visitation and Mother [was] not to go to Children's school or the foster parents' home. DHS and CUA were ordered to explore relatives and family members for Children's placement, since Children were not in the same placement together.

Trial Court Opinion, 6/25/2019, at 1-3 (footnote omitted). This timely appeal resulted.[3]

On appeal, Mother raises the following issues[4] for our review:

_____

[3] Counsel for Mother filed three separate notices of appeal, one for each docket number corresponding to each child, with corresponding concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2). On April 5, 2019, the trial court granted trial counsel's motion to withdraw and appointed new counsel to represent Mother on appeal. By order entered on April 29, 2019, this Court *sua sponte* consolidated the three cases for appeal. The trial court issued a single opinion pursuant to Pa.R.A.P. 1925(a) on June 25, 2019.

[4] Mother raised an additional issue challenging the effectiveness of her trial counsel in her concise statements, but she has abandoned that challenge on appeal and we find it waived. ***Commonwealth v. Dunphy***, 20 A.3d 1215,

1. Whether the trial court erred by adjudicating the [C]hildren dependent pursuant to 42 Pa.C.S.A. [§] 6302 without clear and convincing evidence that the [C]hildren were without proper parental care and control[?]

2. Whether the trial court erred by removing the [C]hildren from [M]other's home pursuant to 42 Pa.C.S.A. [§] 6302 without clear and convincing evidence that it was in the [C]hildren's best interest to be removed[?]

3. Whether the trial court erred by finding that [DHS] made reasonable efforts to prevent or eliminate the need for removal of the [C]hildren from [M]other's home without clear and convincing evidence to prove that such reasonable efforts were actually made by DHS[?]

Mother's Brief at 7.

Mother's three issues are inter-related and we will examine them together. First, Mother argues that DHS did not prove by clear and convincing evidence that Children were without proper care or control. *Id.* at 11-12. More specifically, Mother claims that DHS failed to prove that Mother suffered from mental health issues and that the allegation "was completely refuted by the licensed, professional psychologist that examined [M]other at [an] evaluation." *Id.* at 11. Mother further argues she disproved the allegation that she was using PCP regularly and while she acknowledged she used

---

1218 (Pa. Super. 2011) (Issues raised in Pa.R.A.P. 1925(b) statement that are not included in appellate brief are abandoned). Issues are waived for failing to present any argument in support thereof. **See Commonwealth v. Woodard**, 129 A.3d 480, 509 (Pa. 2015) (holding that "where an appellate brief fails to ... develop an issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate appellant's arguments for [her].").

marijuana in the past, Mother no longer uses marijuana and there was no evidence that her prior use jeopardized Children. *Id.* at 12. Mother also asserts that "the evidence provided at the adjudicatory hearing regarding [M]other's unemployment and lack of stable housing was insufficient to establish a lack of proper parental care by clear and convincing evidence." *Id.* Mother claims she was employed as a home health aide at the time of the adjudication hearing. *Id.* Mother avers that although she was "improperly evicted from her previous home, she was residing with the [C]hildren in the home of [M]aternal [G]randmother[,]" when "DHS insisted that [M]other vacate that home as part of a safety plan, yet offered no alternative for [M]other and the [C]hildren to remain together." *Id.* Next, for the same reasons as set forth above, Mother contends that DHS failed to present evidence that removing Children from Mother was in their best interest. *Id.* at 13. Finally, Mother argues that DHS did not make reasonable efforts to prevent or eliminate the need for removal of Children and did not establish the necessity of emergency placement. *Id.* at 14. She claims that when she refused to implement a safety plan so Children could reside with Maternal Grandmother, "DHS separated the [C]hildren from not only [M]other, but also from Maternal Grandmother [and that t]hese actions prove the vindictiveness of DHS [] indicating that they [were] willing to allow the [C]hildren to suffer in order to punish [M]other[.]" *Id.*

Our standard and scope of review in dependency cases is well settled:

[W]e must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion.[5] Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*Interest of K.C.*, 156 A.3d 1179, 1183 (Pa. Super. 2017) (citation omitted).

This Court has previously explained:

Section 6302(1) of the Juvenile Act defines a dependent child as one who

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302(1). Further, we have explained that the question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available. The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and

_____

[5] "An abuse of discretion is not merely an error of judgment, but is, *inter alia*, a manifestly unreasonable judgment or a misapplication of law." *In Interest of C.K.*, 165 A.3d 935, 941 (Pa. Super. 2017).

convincing evidence that a child meets that statutory definition of dependency.

*Interest of S.U.*, 204 A.3d 949, 963 (Pa. Super. 2019) (internal case citations, quotations, and original brackets omitted).

After determining that a child is dependent, this Court has explained that, consistent with the best interests of the child, a trial court may make an appropriate disposition in order to protect the child's physical, mental, and moral welfare, including transferring temporary custody to a public agency. *In re M.L.*, 757 A.2d 849, 850–851 (Pa. 2000); *see also In re L.C., II*, 900 A.2d 378, 381 (Pa. Super. 2006). We have stated:

> Even after a child has been adjudicated dependent, however, a court may not separate that child from his or her parent unless it finds that the separation is clearly necessary. Such necessity is implicated where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody.

*In re G.T.*, 845 A.2d 870, 873 (Pa. Super. 2004) (quotations and citations omitted) (brackets in original).

"Prior to entering any order of disposition […] that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court […] that continuation of the child in his home would be contrary to the welfare, safety or health of the child[.]"  42 Pa.C.S.A. § 6351(b)(1).  The trial court is to determine "whether reasonable efforts were made  prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition [or] if preventive services were not offered due to

the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances[.]" 42 Pa.C.S.A. § 6351(b)(2)-(3).

Here, at the dependency hearing, Mother testified that she was living in a shelter for single female abuse victims, but refused to provide the address saying that the information was private in order to protect the other abused women staying there. N.T., 3/4/2019, at 86-87. Mother did not provide DHS with housing information so that the agency could conduct a home assessment. *Id.* at 31-32. Moreover, DHS was not able to secure Child 3's location and Mother was not forthcoming about it initially. *Id.* at 33-36. Mother and other family members were disrupting Child 1 and Child 2 at their school, removing them from class to speak with them without supervision. *Id.* at 60-61; 104. Mother cancelled an IEP evaluation at school for Child 1. *Id.* at 32. Mother disrupted Children's subsequent kinship and foster care placements, by telephoning Children incessantly, resulting in multiple placement changes for each of the Children. *Id.* at 37-44; 104. Children had not seen a doctor, dentist, or ophthalmologist in years. *Id.* at 43. Mother admitted that she was using marijuana during her pregnancy with Child 3 and was smoking marijuana regularly until DHS got involved in this case. *Id.* at 76-77. Mother refused DHS's safety plan services. *Id.* at 98-100.

DHS established by clear and convincing evidence that Children were without proper parental control. The evidence established that Mother placed the health, safety and welfare of Children at risk. Children have not received adequate medical, dental or vision care in years. Children did not have stable

housing. Mother consistently disrupted Children's education and their kinship and foster care placements. This evidence established that Children were without proper care. Moreover, DHS offered Mother services to develop a safety plan and to obtain appropriate housing, but Mother refused. As such, the trial court determined that DHS made reasonable efforts to avoid placing Children as required under § 6351(b). Trial Court Opinion, 6/25/2019, at 7. Furthermore, the trial court heard testimony that safety checks were performed for Children the month prior to the adjudication hearing and it was determined that their basic needs were being met in their current placements. N.T., 3/4/2019, at 118. At that time, DHS was open to exploring other family members as possible kinship resources for Children. *Id.* at 45-46. "[T]he trial court found it in Children's best interest, as to their safety and well-being, to remain placed in their respective foster and kinship homes." Trial Court Opinion, 6/25/2019, at 7. We discern no abuse of discretion. Accordingly, we conclude that the trial court properly adjudicated Children dependent based upon Mother's inability to provide proper parental control or care for Children, DHS made reasonable efforts to avoid placing Children as required under § 6351, and the record supports the trial court's determination that Children's best interests are served by remaining in their current DHS placements. As such, Mother's appellate arguments lack merit.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/3/19