J-A03039-19

2019 PA Super 101

IN THE INTEREST OF: T.M.A.,      :    IN THE SUPERIOR COURT OF
A MINOR                          :         PENNSYLVANIA
                                 :
                                 :
                                 :
                                 :
                                 :
                                 :
APPEAL OF: ALLEGHENY COUNTY      :
OFFICE OF CHILDREN, YOUTH        :
AND FAMILIES                     :    No. 1147 WDA 2018


Appeal from the Order Entered July 19, 2018
in the Court of Common Pleas of Allegheny County
Family Court at No(s): CP-02-DP-0000570-2017

BEFORE:   BOWES, J., SHOGAN, J. and STRASSBURGER, J.*

OPINION BY STRASSBURGER, J.:                 **FILED MARCH 29, 2019**

Allegheny County Office of Children, Youth and Families (CYF) appeals

from the order entered July 19, 2018, wherein the juvenile court adjudicated

minor child T.M.A. dependent pursuant to 42 Pa.C.S. § 6302(6) of the

Juvenile Act.  We affirm.

T.M.A. was born in May 2001.  At the time of the dependency

adjudication, T.M.A. was 17 years old.  T.M.A.'s mother is L.M. (Mother).

T.M.A. has long believed that a man named M.A. was her father, despite

Mother's knowledge that genetic testing in 2004 ruled out M.A.'s paternity.

The record does not reveal when T.M.A. learned M.A. was not her father, but

when she found out, this issue became one source of conflict between T.M.A.

_____

* Retired Senior Judge assigned to the Superior Court.

and Mother. Mother named another man, R.H., as T.M.A.'s father, but his paternity has not been legally established.[1]

The instant matter[2] arose on June 18, 2018, when M.A.'s mother, P.A. (Petitioner), whom T.M.A. considers to be her grandmother, filed an application to file a private petition of dependency regarding T.M.A. pursuant to Pa.R.J.C.P. 1320 ("Any person, other than the county agency, may present an application to file a private petition with the court."). Petitioner, proceeding *pro* se, utilized the form provided by the juvenile court, which combined the Pa.R.J.C.P. 1320 application and the dependency petition in one document. **See generally** Application to File Private Dependency

---

[1] Mother testified that R.H. has been incarcerated since 2003 and she knew he was T.M.A.'s father "from the beginning," but she was "just a kid" and R.H. "had a woman." N.T., 7/18/2018, at 8. CYF informed the juvenile court that it sent R.H. a letter informing him that someone had named him as a father of a child and requested that he contact CYF. Juvenile Court Opinion, 9/12/2018, at 5 n.4.

[2] This was not the family's first experience with juvenile court. In connection with a delinquency matter, T.M.A. was placed in a juvenile detention center and later released in May 2017. Upon her release, CYF placed T.M.A. in foster care and filed a dependency shelter care application because T.M.A. initially refused to reside with Mother. Shelter Care Application, 5/7/2017, at 3. At the shelter care hearing, the juvenile court ordered T.M.A. to return to Mother with the caveat that she remain on home detention to comply with her probation pending electronic home monitoring. Shelter Care Order, 5/15/2017, at 1. CYF filed a dependency petition, alleging that T.M.A. was a dependent child because of her initial refusal to return home to Mother, her pending juvenile delinquency and need for electronic home monitoring, and her declining grades and attendance at school. Dependency Petition, 5/17/2017, at 3. However, CYF withdrew the petition with the agreement of all parties, and the juvenile court dismissed the matter on June 8, 2017. Closure/Withdrawal/Dismissal of Juvenile Section Child Protection Matter, 6/8/2017, at 1.

Petition (Application) and Private Dependency Petition (Petition), 6/18/2018; Pa.R.J.C.P. 1330 (authorizing the filing of a dependency petition at any time). On the Application and Petition form, Petitioner checked a box indicating her belief that T.M.A. was "without proper parental care or control" pursuant to subsection (1) of the definition of dependent child set forth in 42 Pa.C.S. § 6302. *Id.* at 2. In support of her Application and Petition, Petitioner averred as follows.

> My granddaughter has been living with me for [three] years. I am getting to the point where I need assitance [*sic*] to continue to care for her. I also need the ability to make medical [and] education decisions for her in order to get her insurance. During a [j]uvenile consent decree hearing before Judge McCrady, I was advised to file for [d]ependency.

*Id.*

The juvenile court ordered CYF to investigate the allegations in Petitioner's Application and Petition. Order Referring Private Dependency Petition to [CYF] for Investigation, 6/11/2018, at 1. After a hearing pursuant to Pa.R.J.C.P. 1321, the juvenile court granted Petitioner's Application to file the Petition in accordance with Pa.R.J.C.P. 1321(B)(1). *See* Order, 6/28/2018, at 1. The juvenile court gave permission for CYF to intervene[3] and scheduled an adjudication hearing on Petitioner's Petition. *Id.*

---

[3] Technically there was no need to provide CYF with permission to intervene at this point, as Rule 1321 states that "[f]ollowing grant of an application under this rule, the county agency **shall** be joined as a party in any further
*(Footnote Continued Next Page)*

- 3 -

At the time of the adjudication hearing, T.M.A. was attending summer school. N.T., 7/18/2018, at 18. She was on probation and receiving services through probation, including therapy through Wesley Family Services, and drug and alcohol services, which she had completed. *Id.* at 18. Petitioner testified that T.M.A. has resided with her off and on her whole life, and resided with her consistently for the first three and one-half years of T.M.A.'s life and for the past three and one-half years. N.T., 7/18/2018, at 11. According to Petitioner, she desired to remain in the role of grandmother and for T.M.A. and Mother to get along as mother and daughter, "[b]ut it didn't happen like that, because [T.M.A.] was having issues and she came to stay with me[, and] I'm not going to put her out on the street." *Id.* at 11-12. She testified that she needed assistance caring for T.M.A. *Id.* at 12. Specifically, T.M.A. is in need of health insurance, and Petitioner cannot make any appointments for T.M.A. without it as she is not financially able to pay the bill. *Id.* at 12-13. Petitioner also lacked medical-decision-making authority to assist T.M.A. with any health issues, including T.M.A.'s ongoing need for an inhaler to treat her asthma. *Id.* at 12.

During her testimony, Mother acknowledged that T.M.A. went back and forth between her house and Petitioner's house, especially when T.M.A. did not like Mother's rules. *Id.* at 14, 16, 27-28. Mother testified that she

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

proceedings upon filing and service of a private petition pursuant to Rules 1330 and 1331." Pa.R.J.C.P. 1321(C) (emphasis added).

never gave permission for T.M.A. to stay with Petitioner. *Id.* at 31. When asked if Mother was willing to have T.M.A. back, she responded by saying T.M.A. was not ready because T.M.A. is upset by the "whole paternity situation." *Id.* at 27. When pressed further, Mother stated, "Whenever she can come. I mean, I don't care. I never said she -- I mean, she never got good help." *Id.*

Mother admitted she had stopped providing insurance for T.M.A. a few months ago; she did not renew it for T.M.A. because T.M.A. was not staying in her house. *Id.* at 23-24, 33-35. Mother did not know the last time T.M.A. went to the dentist or the exact status of T.M.A.'s asthma and required inhaler. *Id.* at 24-26. Mother signed an individualized education plan (IEP) for T.M.A. for her "learning" but did not know with which services T.M.A. needed or already had. *Id.* at 26-27, 30. She also did not know whether or not T.M.A. had been recommended for an evaluation for medication. *Id.* at 30. Mother provided T.M.A. with new shoes for the first day of school when T.M.A. asked her to do so. *Id.* at 28.

T.M.A. testified that she wanted to stay with Petitioner and does not want to return home to Mother because of conflict between them. *Id.* at 39-40. From T.M.A.'s perspective, Mother just is not "in [her] life," it felt as if she did not have a mother, and Mother does not show her that she loves or cares about her. *Id.* at 39, 42. T.M.A. did not want anything to do with Mother because of the "dad situation;" T.M.A. said Mother made her feel as

if she did not have a father. ***Id.*** T.M.A. testified that if the juvenile court ordered her to return to Mother, she would not go. ***Id.*** at 39. In the previous year before the hearing, T.M.A. was returned to Mother's home, but she stayed there for only one week before returning to Petitioner's house. ***Id.*** at 43. T.M.A. used to desire to have a relationship with Mother and undergo family therapy with Mother, but she no longer wanted to do so, although she later said she might eventually. ***Id.*** at 41, 47. She did wish to continue with her own individual therapy and look into medication because she believed her anger was "out of control." ***Id.*** at 41, 45. At the time of the hearing, T.M.A. had an inhaler, which had been provided by her other grandmother, but she testified that she would need another one eventually to address her asthma. ***Id.*** at 44. Her tooth was hurting and she needed to go to the dentist. ***Id.*** She also was in the need of more clothes because she kept growing. ***Id.*** at 46.

The supervisor of T.M.A.'s juvenile probation officer testified that T.M.A. was meeting all of her conditions of probation, she has good behavior in school, she receives a special education curriculum through her IEP, and she is working on goals with her counselor through probation. ***Id.*** at 52-54. However, she noted that probation cannot provide medical treatment, food, or clothing for T.M.A. ***Id.*** She also verified that T.M.A. goes back and forth between Mother's house and Petitioner's house, especially after Mother claimed T.M.A. was misbehaving. ***Id.*** at 53.

Finally, T.M.A.'s therapist from Wesley Family Services testified that he had been working with T.M.A. for a year and she has made some improvement with her social skills and decision making. *Id.* at 56. He believed she needed additional services to help her transition into adulthood. *Id.* About a year ago, her therapist reached out to Mother to obtain an evaluation for mental health medication for T.M.A. but "it kind of fell through," and T.M.A. still needed a medication evaluation. *Id.* at 57. She also needed to continue to work on things like getting a job and doing better in school. *Id.* at 58. Overall, however, he believed T.M.A. was "pretty much doing what she needs to do." *Id.*

At the conclusion of the hearing, CYF opposed an adjudication of dependency, arguing that Petitioner stood *in loco parentis*,[4] was able to provide for T.M.A.'s needs, and could obtain medical assistance for T.M.A. if Petitioner provided her own personal income information and filled out the medical assistance application. *Id.* at 60. Petitioner, who appeared *pro se*, argued that she needed assistance for T.M.A. and noted she had no legal authority to operate as her guardian. *Id.* at 61. T.M.A., through her attorney,[5] argued that she was dependent[6] under subsection (1) or

---

[4] CYF does not maintain this argument on appeal.

[5] Because Petitioner alleged T.M.A. was dependent under subsection (1), KidsVoice initially represented T.M.A. as guardian *ad litem*. *See* Order Appointing Guardian *ad Litem*, 6/11/2018, at 1. Since T.M.A. ultimately was adjudicated dependent pursuant to subsection (6), KidsVoice now represents
*(Footnote Continued Next Page)*

subsection (6) of the definition of dependent child set forth at 42 Pa.C.S. § 6302. *Id.* at 63. The juvenile court determined that Petitioner did not satisfy her burden of proving subsection (1), but did establish dependency pursuant to subsection (6) due to parent/child conflict. *Id.* at 64. Accordingly, the juvenile court entered an order adjudicating T.M.A. dependent pursuant to subsection (6).

CYF timely filed a notice of appeal from the adjudication order. Both CYF and the juvenile court complied with Pa.R.A.P. 1925. CYF raises the following issue for our review: "[w]hether the [juvenile] court abused its discretion when it adjudicated T.M.A. dependent when there was insufficient evidence presented to support a finding of dependency?"[7] CYF's Brief at 4.

_(Footnote Continued)_ _____

T.M.A. as legal counsel. *See id.* ("If the grounds for dependency DO NOT fall within paragraph (1) … of the definition of Dependent Child in 42 Pa.C.S. § 6302, KidsVoice is appointed as attorney for [T.M.A.]").

[6] Mother did not offer her position at the hearing regarding whether Petitioner met her burden of establishing that T.M.A. was dependent. *See* N.T., 7/18/2018, at 61. She also has not participated in this appeal.

[7] Both T.M.A. and the juvenile court urge us to conclude that CYF waived the issue it presents on appeal, contending that CYF did not offer a specific objection at the hearing to dependency under subsection (6). However, as noted *supra*, Petitioner only checked the box for subsection (1) in her Petition. In its Rule 1925(a) opinion, the juvenile court stated that it granted Petitioner, who was operating *pro se*, "some leeway … in advancing her allegations … as to why she believed T.M.A. was a dependent child." Juvenile Court Opinion, 9/12/2018, at 5 n.3. Further, the juvenile court notes that the substance of the evidence advanced by Petitioner at the hearing was related to the averments she set forth in the Petition. CYF does not argue that it did not receive notice or was otherwise denied due process by the juvenile court's adjudicating T.M.A. dependent pursuant to a different
_(Footnote Continued Next Page)_

- 8 -

We review an order adjudicating a child dependent for an abuse of discretion. *In the Interest of: S.U.*, ___ A.3d ___, ___, 2019 WL 763579 (Pa. Super. 2019) (*en banc*). "An abuse of discretion is not merely an error of judgment, but is, *inter alia*, a manifestly unreasonable judgment or a misapplication of law." *In Interest of C.K.*, 165 A.3d 935, 941 (Pa. Super. 2017). Our standard of review requires us to accept the juvenile court's findings of fact and credibility determinations if they are supported by the record, but does not require us to accept the juvenile court's inferences or conclusions of law. *S.U.*, *supra*. "[W]e accord great weight to the [juvenile] court's fact-finding function because the [juvenile] court is in the best position to observe and rule on the credibility of the parties and witnesses." *C.K.*, 165 A.3d at 941.

Subsection (6) of the Juvenile Act defines a dependent child as one who "has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian[,] or other custodian and who is ungovernable and found to be in need of care,

---

*(Footnote Continued)*

subsection than the one checked on the Petition. In fact, CYF argues strenuously that it preserved its objection to dependency under subsection (6) by its general argument at the hearing that "there is no dependency here." CYF's Brief at 12 (citing N.T., 7/18/2018, at 60). CYF also argued there was "no testimony today that would support a finding of dependency of [T.M.A. pursuant to] any of the sections of the Juvenile Act" and that Petitioner was meeting T.M.A.'s needs. N.T., 7/18/2018, at 61. Under the circumstances of this case, we decline to find waiver.

treatment or supervision[.]"[8]  42 Pa.C.S. § 6302.  Following a hearing, "[a]

court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that

a child is dependent if the child meets the statutory definition by clear and

convincing evidence."  *In re M.L.*, 757 A.2d 849, 850-51 (Pa. 2000).  The

burden of proof is on the petitioner.  *S.U.*, *supra*.  Once the juvenile court

finds a child is dependent, the Juvenile Act then authorizes the court to enter

an order of disposition, which is "best suited to the safety, protection[,] and

physical, mental, and moral welfare of the child[.]"  42 Pa.C.S. § 6351(a).

On appeal, CYF argues "no evidence was presented that T.M.A.

committed any acts, specific or habitual, where T.M.A. disobeyed the

commands of either her parent or guardian."  CYF's Brief at 16.  Further,

since T.M.A. was compliant with the terms of her probation, including her

therapy requirement, and Petitioner described T.M.A. as well behaved, CYF

---

[8] Besides subsection (6), there are nine other grounds for dependency included in the definition of dependent child.  *See* 42 Pa.C.S. § 6302.  One of those additional grounds is subsection (1), which includes instances where a child "is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals" and "may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]"  *Id.*  At the time of the hearing, the juvenile court stated that subsection (1) was not met, but it later asserted that there was evidence presented to support a subsection (1) adjudication. *Compare* N.T., 7/18/2018, at 64 *with* Juvenile Court Opinion, 9/12/2018, at 11 n.7.  While some of the evidence presented at the hearing may have served to establish dependency pursuant to subsection (1), the juvenile court only adjudicated T.M.A. dependent under subsection (6) in its July 19, 2018 order.  Accordingly, we shall only address whether there was sufficient evidence presented to satisfy a subsection (6) adjudication.

contends T.M.A. was not ungovernable. *Id.* at 17. CYF claims "the only reason T.M.A. was not residing with Mother" was because in T.M.A.'s delinquency matter, the juvenile court ordered T.M.A. to reside with Petitioner. *Id.* at 16-17. CYF asserts the juvenile court should not have given weight to T.M.A.'s testimony that she would not stay with Mother if the court ordered her to reside there since T.M.A. was complying with an unspecified delinquency order. *Id.* at 17. Finally, CYF argues T.M.A. was already receiving care, treatment, and supervision through probation. *Id.* at 18.

Upon review of the record, we determine that the juvenile court did not abuse its discretion in concluding that Petitioner met her burden of proving that T.M.A. is a dependent child pursuant to subsection (6). The record is replete with indications of the conflict between T.M.A. and Mother, and because of this conflict, T.M.A. refused to stay with Mother. *See, e.g.*, N.T., 7/18/2018, at 27; 39-43. Contrary to CYF's assertion that T.M.A. had care through Petitioner and sometimes "would visit at [Mother's] home," *see* CYF's Brief at 17, Mother testified that T.M.A. repeatedly bounced between Mother and Petitioner's home:

> when she doesn't want to follow my rules, [T.M.A.] will go back to [Petitioner's house]. When she say she got to go, because she does whatever at [Petitioner's] house, she will go back. So it is like back and forth situation. Wherever [T.M.A.] wants to be where [T.M.A.] feels like at the moment….

N.T., 7/18/2018, at 14; **see also id.** at 16 (indicating T.M.A. went back to Petitioner's house when [T.M.A.'s] girlfriend went to stay there; "[t]hen half the time she [does not] stay there. She is elsewhere."); **id.** at 26-27 ("I can't ever say she ever physically lived anywhere, but she would come back and forth[.]"). The supervisor of T.M.A.'s juvenile probation officer also testified there have been times during T.M.A.'s probation that Mother called probation to say T.M.A. was "misbehaving and then [T.M.A.] runs back to [Petitioner's home]. And so she has gone back and forth. And she is pretty much this past year been at [Petitioner's] home." **Id.** at 53. Further, T.M.A. testified she would not stay at Mother's house if the juvenile court returned her to Mother's care. **Id.** at 39. It was within the juvenile court's discretion to credit T.M.A.'s statement, particularly when T.M.A. also described an incident the prior year when she returned to Mother's home, but only stayed for one week before returning on her own to Petitioner's house.[9] N.T., 7/18/2018, at 43. All of this testimony belies CYF's contention that T.M.A. was not staying with Mother only because the juvenile court ordered T.M.A. to stay with Petitioner beginning in December 2017 in T.M.A.'s delinquency

---

[9] T.M.A. did not provide a specific timeline in her testimony, but referred to being in a foster home then returning to Mother's house the year prior. **Id.** at 43. Presumably she is referring to CYF's placement of her in foster care on May 5, 2017, after she refused to go to Mother's home upon her discharge from the Shuman detention center, followed by the juvenile court's order to return her to Mother following the May 8, 2017 shelter care hearing. **See** CYF Shelter Care Application, 5/5/2017, at 3; Shelter Care Order, 5/15/2017, at 1.

matter. Instead, it is clear that due to the conflict between them, T.M.A. refuses to stay at Mother's house, thereby committing acts of habitual disobedience and rendering her ungovernable by Mother.

Further, the record plainly indicates that T.M.A. is in need of care, treatment, and supervision. While Petitioner was meeting as many of T.M.A.'s needs as she could, she was not T.M.A's legal guardian or custodian. Mother and Petitioner did not appear to coordinate T.M.A.'s care in any fashion. Mother failed to renew T.M.A.'s health insurance or ensure that T.M.A. had another way of securing health care. *Id.* at 12-13. T.M.A. needed consistent access to an inhaler to manage her asthma. *Id.* T.M.A. testified that she was in need of an evaluation for medication to address her "out of control" anger, dental care, and clothing. *Id.* at 41, 44-46; *see also id.* at 57. She did not have an adult with medical decision making authority who assisted her in managing her healthcare. *Id.* She also did not have an adult with educational decision making authority who consistently oversaw her educational needs and IEP. *Id.* at 26-27, 30. While the juvenile probation department was able to address some of T.M.A.'s needs, other needs were outstanding and simply could not be addressed by probation. The juvenile probation department is not a substitute for a parent, legal guardian, or custodian.

Since T.M.A. has made some strides while she has been on probation and Petitioner indicated she does not have difficulty with T.M.A.'s behavior,

it is possible that T.M.A.'s behavior is a product of Mother's failure to provide proper parental care or control, and T.M.A. could be governable if she had a parent who attempted to govern her. It is also possible that Mother tries, and T.M.A. simply refuses to listen. However, we decline to speculate. The origins of family conflict are often complex, and getting to the bottom of the exact root of the conflict is better left to the parties and their therapists rather than courts. For the purpose of this appeal, we just need to determine whether the juvenile court abused its discretion in determining that clear and convincing evidence was presented to establish the statutory definition of dependent child. In this case, we do not hesitate to conclude that the juvenile court did not abuse its discretion. Petitioner established that there was conflict between T.M.A. and Mother that caused T.M.A. to refuse to stay in Mother's house. T.M.A. was left without a caregiver who had legal authority to oversee all of her medical and educational needs, ensure that she had a consistent home, and address her care, treatment, and supervision in any sort of coordinated and comprehensive fashion.

Based on the foregoing, we hold the juvenile court did not abuse its discretion in determining that Petitioner established that T.M.A. was a dependent child pursuant to subsection (6) of the definition of dependent child under the Juvenile Act. We therefore affirm the juvenile court's July 19, 2018 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/29/2019</u>