J-S63031-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.H., A MINOR | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.P.-H., Mother | : | No. 1286 EDA 2019 |

Appeal from the Order Entered April 3, 2019
in the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0000486-2019

BEFORE:   GANTMAN, P.J.E., MURRAY, J. and STRASSBURGER, J.[*]

MEMORANDUM BY STRASSBURGER, J.:           **FILED DECEMBER 10, 2019**

K.P.-H (Mother) appeals from the order entered April 3, 2019, wherein the juvenile court adjudicated minor child M.H. (Child) dependent pursuant to 42 Pa.C.S. § 6302(1) of the Juvenile Act.  We affirm.

At the time of the dependency adjudication in March 2019, Child was approximately two weeks old.[1]  Child's parents are Mother and C.H. (Father; collectively, Parents).[2]  Parents reside together at a home owned by Father, although Father spends significant amounts of time in Virginia.

---

[1] The juvenile court appointed attorney Marie Regine Charles-Asar as guardian *ad litem* for Child.  We note with displeasure that Attorney Charles-Asar did not file a brief in this Court, join the brief of another party, or otherwise advocate for Child's interests on appeal.

[2] Father neither filed his own appeal nor participated in Mother's appeal.

[*] Retired Senior Judge assigned to the Superior Court.

The Philadelphia County Department of Human Services (DHS) sought and obtained an order of protective custody in order to remove Child from Parents' care shortly after his birth. Thereafter, DHS filed its dependency petition on March 26, 2019, and the juvenile court conducted an adjudicatory and dispositional hearing regarding the petition on April 3, 2019.

We summarize the evidence introduced at the hearing as follows. In addition to Child, Mother and Father are the parents to five other children: L.H., born in 2005; T.H., born in 2006; C.H., born in 2009; I.H., born in 2011; and N.H., born in 2017. Parents have a long history of involvement with DHS, culminating in the termination of their parental rights to all five of Child's siblings. In fact, their rights to N.H. had been just terminated approximately one month before Child's adjudicatory and dispositional hearing. DHS Exhibit A; F.

Over the course of its involvement with the family, DHS had received, and determined to be valid, seven general protective services (GPS) reports and one child protective services (CPS) report regarding Parents. N.T, 4/3/2019, at 14. Of note is that in 2011, DHS investigated a CPS report of sexual abuse committed by Parents against the two oldest children. DHS Exhibit C. The report alleged that L.H. and T.H. had told the reporting source that Parents had sexual intercourse and masturbated in front of them. *Id.* Additionally, the report alleged that Mother had "tickled" L.H.'s

vagina while watching cartoons with her, and Father had rubbed L.H.'s vagina while digitally penetrating T.H.'s vagina. *Id.* Following its investigation, DHS determined that sexual abuse was indicated as to both Parents. N.T., 4/3/2019, at 22-24. This past history caused DHS concern in relation to Mother's current ability to parent Child safely. *Id.* at 23-24.

Besides the indicated CPS report, a recurring issue throughout Mother's involvement with DHS has been her history of substance abuse, including her use of PCP. *Id.* at 14. Despite N.H.'s open dependency case, Mother's whereabouts had been unknown to DHS since September 2018, and DHS believed Mother was using drugs and trying to hide her pregnancy from DHS. *Id.* at 12-13. At Child's birth in March 2019, Mother and Child tested positive for benzodiazepines. *Id.* at 13-14. Mother claims to have had a prescription for the benzodiazepines. *See* Mother's Exhibit 3. However, even if the drug were prescribed, DHS was still concerned about Mother's use of a controlled substance. DHS's concern stemmed from Mother's substance abuse history, her failure to obtain drug treatment, and the pending federal indictment of Mother's prescribing doctor.[3] *Id.* at 13-14. Moreover, Mother appeared to be under the influence of a drug or drugs when a service provider went to her home on the Friday before the hearing.

---

[3] According to DHS, the federal indictment related to the doctor's allegedly prescribing narcotics and medications in exchange for sexual favors. N.T., 4/3/2019, at 37. There is no allegation that Mother herself engaged in sexual favors with the doctor.

*Id.* at 39-40. Additionally, although the service provider had told Mother at her home on Friday that Mother could visit with Child on the following Monday, Mother failed to confirm the visit and the visit did not occur. *Id.*

Mother's substance abuse has led to multiple convictions for various crimes, including many convictions for retail theft, as well as other convictions for theft by unlawful taking, driving under the influence, and recklessly endangering another person. *See* DHS Exhibit D. At the time of the hearing, Mother remained on criminal probation. N.T., 4/3/2019, at 24.

At some point in the past while she had been incarcerated, Mother completed five out of 16 parenting classes. Mother's Exhibit 2. Mother wished to enroll in a mother-baby program and had made inquiries into a program at Interim House. N.T, 4/3/2019, at 51-52. Placement into a similar mother-baby program had been explored for Child's sibling N.H. around September 2018, but N.H. remained in foster care up until Mother's parental rights were terminated in March 2019, because Mother did not stay in contact with DHS and stopped attending N.H.'s court hearings. *See* DHS Exhibit F.

In sum, DHS questioned Mother's ability to parent Child based upon her substance abuse history, her untreated mental health, and the unresolved concerns raised during the parenting capacity evaluation she underwent during N.H.'s dependency. N.T., 4/3/2019 at 34-35. DHS was also concerned about Mother's continued relationship with Father due to the

allegations of ongoing domestic violence between them, Father's past substance abuse history, Father's failure to complete a parental capacity evaluation, and Father's past sexual abuse of the eldest children. *Id.* at 34-35.

At the conclusion of the hearing, based on the aforementioned evidence introduced at the hearing, the juvenile court adjudicated Child dependent, explaining that it was particularly concerned with the five prior terminations of parental rights, including one that occurred very recently. *Id.* at 58. The juvenile court indicated that it might consider placing Child in a mother-baby program in the future, but for the time being the court wanted Child to remain in kinship care. *Id.* at 59. As further part of its disposition, the juvenile court ordered Mother to undergo a drug inpatient program due to her history and a psychological evaluation. *Id.* at 59-60. It also instructed the service provider to assist Mother with engaging all of the services recommended in the parenting capacity evaluation she underwent during N.H.'s dependency. *Id.* at 60. Finally, the juvenile court made a finding of aggravated circumstances based on the prior terminations of parental rights, but ordered DHS to make reasonable efforts to reunify Mother and Child for at least one review cycle, and indicated it would revisit the issue of relieving DHS from making efforts at the next hearing based upon Mother's participation and progress in services. *Id.*

Mother did not appeal the aggravated circumstances order, but timely filed the instant appeal regarding the adjudication and dispositional order. Mother and the juvenile court complied with Pa.R.A.P. 1925. On appeal, Mother challenges the sufficiency of DHS's evidence to sustain its burden as to Child's dependency, as well as the juvenile court's decision to place Child in kinship care instead of with Mother at a mother-baby program. Mother's Brief at 3.

We review an order adjudicating a child dependent for an abuse of discretion. *In the Interest of: S.U.*, 204 A.3d 949, 963 (Pa. Super. 2019) (*en banc*). "An abuse of discretion is not merely an error of judgment, but is, *inter alia*, a manifestly unreasonable judgment or a misapplication of law." *In Interest of C.K.*, 165 A.3d 935, 941 (Pa. Super. 2017). Our standard of review requires us to accept the juvenile court's findings of fact and credibility determinations if they are supported by the record, but does not require us to accept the juvenile court's inferences or conclusions of law. *S.U.*, 204 A.3d at 963. "[W]e accord great weight to the [juvenile] court's fact-finding function because the [juvenile] court is in the best position to observe and rule on the credibility of the parties and witnesses." *C.K.*, 165 A.3d at 941.

As this Court has explained,

Section 6302(1) of the Juvenile Act defines a "dependent child" as one who

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302(1). Further, we have explained that the question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available. The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency.

*S.U.*, 204 A.3d at 963 (some citations and quotation marks omitted).

"Following a hearing, a court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence." *In the Interest of T.M.A.*, 207 A.3d 375, 380 (Pa. Super. 2019) (citation and quotation marks omitted).

"Once the juvenile court finds a child is dependent, the Juvenile Act then authorizes the court to enter an order of disposition, which is 'best suited to the safety, protection[,] and physical, mental, and moral welfare of the child[.]'" *Id.* (quoting 42 Pa.C.S. § 6351(a)). Regarding disposition, the Juvenile Act provides, in relevant part:

- 7 -

§ 6351. Disposition of dependent child.

...

(b) Required preplacement findings. - Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:

(1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

(3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances[.]

42 Pa.C.S. § 6351(b).

On appeal, Mother argues that DHS failed to meet its burden of proof for adjudication. She argues that she was equipped to provide "proper care and control" to Child based upon her involvement in the MOMobile prenatal program during her incarceration, her voluntary attendance at parenting classes,[4] DHS's lack of information as to her compliance with the terms of

---

[4] The exact timing of Mother's incarceration and attendance at the parenting classes is not clear from the record. Some of the information in the record seems to indicate that Mother's incarceration and attendance in the MOMobile program had been recent and during her pregnancy with Child. But there is contradictory information in the record as well, such as Mother's

*(Footnote Continued Next Page)*

- 8 -

her probation, her legal prescription for benzodiazepines, and her exploration of a mother-baby program.[5] Mother's Brief at 4-5. Regarding the dispositional order, Mother argues that even if there were sufficient evidence for the juvenile court to have adjudicated Child dependent, it should have permitted Child to enter into the mother-baby program because it was the least restrictive setting for Child and would have been a reasonable effort to keep the family intact. *Id.* at 6.

Upon review of the record, we determine that the juvenile court did not abuse its discretion in concluding that DHS met its burden of proving that Child is a dependent child pursuant to subsection (1). "It is well-settled that 'a finding of dependency can be made on the basis of prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent.'" *In re E.B.*, 83 A.3d 426, 433 (Pa. Super. 2013) (quoting *In re R.W.J.*, 826 A.2d 10, 14 (Pa. Super. 2003)). The juvenile court is not required to experiment with a child's safety and well-being by placing a child with a parent to determine whether the parent is able to provide suitable care. *Id.* It may adjudicate a child dependent

*(Footnote Continued)* ————————————

statement that she had been "home for almost two years." N.T., 4/3/2019, at 47.

[5] Mother asserts in her brief that she was accepted into a mother-baby program, but such assertion is a stretch based on the information in the record. Mother merely testified that the program had "told [her] that [it had] space … as long as [the goal] is reunification." N.T., 4/3/2019, at 53.

based upon evidence that clearly and convincingly demonstrates that the parent may be a risk to the child. ***Id.***

In this case, the juvenile court was within its discretion to determine that Child was without proper parental care at the time of the hearing based upon Mother's long history with DHS and her failure to correct the concerns that led to the termination of parental rights to her other children. Specifically, Mother failed to resolve ongoing issues regarding her substance abuse, mental health, parenting capacity, and sexual abuse. She also continued her relationship and residence with Father, who also had not addressed his own issues. Moreover, the record demonstrates that Mother's issues with substance abuse are a continued problem, especially given her use of a controlled substance despite her lack of substance abuse treatment, her longstanding substance abuse history, her apparent intoxication during a service provider visit, and her failure to visit with Child.

We also conclude that the juvenile court did not abuse its discretion in continuing Child's placement in kinship care and declining to place Child with Mother at the mother-baby program. The court had already removed Child from Mother's care pursuant to an emergency protective custody order. It was entirely reasonable for the juvenile court to have declined to place Child with Mother in such a program at this juncture based upon Mother's relatively recent failure to follow through with a mother-baby program with N.H.

Based on the foregoing, we affirm the juvenile court's adjudicatory and dispositional order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/19