J-A28026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: E.M., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.M. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 659 MDA 2021 |

Appeal from the Dispositional Order Entered May 25, 2021
In the Court of Common Pleas of Schuylkill County Juvenile Division at
No(s):  CP-54-DP-0000149-2021

BEFORE: LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:              **FILED: FEBRUARY 28, 2022**

K.M. (Mother) appeals *pro se* from the order adjudicating E.M. (Child)[1]

(born May 2021) dependent and transferring custody to the Schuylkill County

Children & Youth Services (CYS).[2]  This case returns to us after we remanded

to have the trial court resolve whether Mother was represented by counsel for

this appeal.  Mother, *pro se*, raises numerous claims, including a violation of

her right to counsel and other challenges to the finding of dependency.  We

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The trial court appointed Tom Campion, Esq., as Child's guardian *ad litem*, but because Attorney Campion was unavailable, James Conville, Esq., represented Child at the shelter care hearing, which we discuss below.

[2] Mother identified J.A. as the father of Child, but as of the date of the dependency hearing, he had not been located.  N.T. Hr'g, 5/24/21, at 3.  The record reflects that Mother has also identified R.R. as Child's father.  Neither J.A. nor R.R. is a party in this case.

affirm based on the trial court's reasoning and deny Mother's application for relief.

We adopt the facts and procedural history set forth in the trial court's opinion. *See* Trial Ct. Op., 6/23/21, at 1-5. Briefly, CYS filed an application for emergency protective custody on May 17, 2021, alleging that Child should be removed from Mother's custody because of substance abuse, mental health, and parenting issues. *Id.* at 1, 5. That same day, the trial court granted the application and scheduled an emergency shelter care hearing for May 20, 2021.[3]

On May 20, 2021, CYS filed a dependency petition, alleging Child was dependent. CYS averred that Mother's other minor child, A.M. (born September 2018), was removed due to Mother's "substance abuse, mental health, and . . . inability to maintain sobriety." Dependency Pet., 5/20/21, at 3. CYS asserted that during Mother's pregnancy with Child, it conducted random drug screens, which returned six positive test results. *Id.* CYS alleged that Mother's cooperation had declined over the prior eight months and she was incarcerated for a probation violation after failing to complete drug and alcohol treatment. *Id.* CYS averred that reasonable efforts were made to prevent Child's placement. *Id.* at 4.

_____

[3] Under 42 Pa.C.S. § 6325, a court may place a child in shelter care "prior to the hearing [if] required to protect . . . the child." 42 Pa.C.S. § 6325.

That same day, the trial court held the emergency shelter care hearing. Mother had court-appointed counsel, Mark Barket, Esq., but he could not appear for the hearing. N.T. Hr'g, 5/20/21, at 3-4, 18. The court proceeded with the hearing without Attorney Barket. *Id.*

At the hearing, counsel for CYS explained that Child, who had been born a few days prior to the hearing, was still hospitalized for "issues regarding [Mother's] opiate abuse." *Id.* at 4. CYS caseworker Lisa Moyer testified that CYS had previously provided services to Mother and A.M. because of Mother's drug use and mental health. *Id.* at 7. Because of Mother's "inability to remain sober," A.M. was removed from Mother's care and eventually custody was transferred to A.M.'s father. *Id.* at 8.

Ms. Moyer testified that Mother had six drug tests between November 2020 and February 2021, which was during her pregnancy with Child, and tested positive for methamphetamines, amphetamines, and opiates. *Id.* Ms. Moyer stated that Mother was incarcerated for a probation violation, tested negative for drugs, and released from prison on May 4, 2021. *Id.* at 8-9. Ms. Moyer said that Mother was tested an additional five times in May 2021, with one negative result and the remaining results pending at the time of the hearing. *Id.* at 10. Ms. Moyer noted that Mother did not keep a telephone appointment with a rehabilitation counselor and had not yet rescheduled that appointment. *Id.* at 11. Ms. Moyer was also concerned that Mother lives with her mother, L.G. (Child's maternal grandmother), who has substance abuse

issues as well as at least one open case with CYS. Additionally, L.G. tested positive for methamphetamine on April 5, 2021. *Id.* at 16-17.

With respect to Child, Ms. Moyer testified that CYS wanted Child in foster care until CYS could ensure that Mother could "stay clean and sober." *Id.* In Ms. Moyer's view, Mother had a history of completing drug treatment, remaining sober for "a couple of negative drug screens," and then relapsing. *Id.* at 10.

Mother acknowledged that she had six positive drug tests since the last time she appeared before the trial court regarding A.M. *Id.* at 20. Mother claimed that she had negative drug test results on May 14 and 16, 2021. *Id.* at 21. At the end of the hearing, the trial court ordered that Child remain at the hospital pending the May 24, 2021 dependency hearing. *Id.* at 27.

On May 24, 2021, the trial court held the dependency hearing, and Attorney Barket attended the proceeding. Ms. Moyer and Mother testified in greater detail about the issues raised at the prior emergency shelter care hearing, such as Mother's history of drug abuse and resistance to treatment. *See, e.g.*, N.T. Hr'g, 5/24/21, at 6-7. Ms. Moyer noted that Mother also tested positive for PCP on the day Child was born. *Id.* at 9. Ms. Moyer testified that CYS contacted or attempted to contact other people for placing Child, but none were suitable. *Id.* at 14. Ms. Moyer also explained that Mother refused inpatient treatment for her addiction. *Id.* at 7, 13.

Mother testified that she missed the telephone appointment with a rehabilitation counselor because she had a conflicting doctor's appointment. *Id.* at 23. Mother could not explain her positive result for PCP. *Id.* at 24. Mother stated that she would live at L.G.'s house with Child. *Id.* Mother also admitted that she had six positive drug test results while pregnant with Child. *Id.* at 27.

At the conclusion of the hearing, CYS argued for Child's continued placement until Mother could "establish sobriety for a longer period of time" but also suggested CYS would be amenable to "early review" if Mother continued to test negative and completed thirty days of drug rehabilitation. *Id.* at 34-35. On May 25, 2021, the trial court found Child to be dependent and removed Child from Mother's care. *Id.* at 13-14.

On May 27, 2021, Mother, *pro se*, timely appealed and contemporaneously filed a Pa.R.A.P. 1925(a)(2)(i) statement of errors complained of on appeal, raising the following eleven issues:

1.  The Court erred in that [CYS] should have never been granted emergency custody as there was no danger to [Child] proven;

2.  The Court erred in that custody of [Child] should not have been transferred to [CYS] as notarized papers were provided to Orphans Court May 17, 2021 giving temporary custody to grandmother [L.G.]; . . .

3.  The Court erred in that three different judges that were not provided all filings were able to decide the outcome of taking a child from his mother;

- 5 -

4. The Court erred in that counsel should have been provided for [Mother] on the May 20, 2021 hearing ([Mother] called CY[S] the morning after being served with the hearing papers at the hospital for counsel);

5. The Court erred in letting two different *guardian ad litem's* with two different opinions represent the child within two days' time;

6. The Court erred in not reviewing the case file of grandmother, [L.G.], as well as putting her caseworker on the stand to testify to her good standing and being a resource for [Child] to come home as subpoenaed twice for the two hearings;

7. The Court erred in not considering all of the recent negative drug screens all of which were not even part of the original affidavit to take him, the last positive screen was February 2021;

8. The Court erred in not considering all of the resources [Mother] has set up for herself (not one program is court ordered or required) but she set up and attends all voluntarily;

9. The Court erred in considering [Mother's] placement through [CYS], which was requested by her mother back in 2013 for addiction to be a factor in her keeping her son in 2021;

10. The Court erred in allowing Karen Rismiller, attorney for [CYS] question [Mother] in regards to her sister['s B.M.] opioid addiction that led to her death in 2018 (3 years before [Child's] birth), also a direct violation of civil rights as opioid addiction is considered a disability, this matter has nothing to do with [Mother] taking care of her child in 2021(county suit to follow);

11. The Court erred in allowing Karen Rismiller to question [Mother] on her having Hepatitis C and how she is able to nurse the baby being a direct violation of HIPA[A] and civil rights as the child was tested at the hospital and the CDC states that nursing with Hepatitis C is safe (county suit to follow) . . . .

Pa.R.A.P. 1925(a)(2)(i) Statement, 5/27/21 (formatting altered).[4]

Mother raises the following issues in her appellate brief, which we reordered for disposition:

1. Whether the trial court's order must be reversed because the court failed to require [CYS] to put on record the manner of service for hearing notices and appellant's appeal rights?

2. Whether the trial court's order must be reversed because the appellant was deprived of her right to produce evidence and witnesses and an opportunity to cross examine?

3. Whether the trial court's order must be reversed because the court failed to provide statement[s], state specific facts for his decision and any legal determinations?

4. Whether the trial court's order must be reversed because the court failed to comply with what needs to be stated on the record pursuant to 237 Pa Code 1512 Section (C)(D)?

5. Whether the trial court's order must be reversed because [CYS] failed to provide notice of the [issues] before court preventing appellant from having a fair opportunity to present a case?

6. Whether the trial court's Opinion of Court should not be considered as it does not comply with Rule 1925?

7. Whether the trial court's order must be reversed because the court failed to comply with [Pa.R.J.C.P. 1408(1)]?

---

[4] Because the trial court's record indicated that privately retained counsel entered his appearance for Mother, this Court remanded to have the trial court resolve whether Mother was represented by that counsel for this appeal. The trial court held that Mother was proceeding *pro se* on appeal and therefore this case is ripe for disposition.

8.      Whether the trial court's order must be reversed because the court and counsel for [Mother] both failed to require [CYS] to provide the lab results of her drug screens?

9.      Whether the trial court's order must be reversed because appellant's right to counsel was denied?

10.     Whether the trial court's order must be reversed because [CYS] failed to provide what exact reasonable efforts were made to prevent placement in foster care?

11.     Whether the trial court's order must be reversed because even if child was determined dependent there was no evidence presented that it was clearly necessary to separate [Child] from his parent?

12.     Whether the trial court's order must be reversed because the court failed to require [CYS] to state their extent [sic] pursuant to Family Findings not just what was replayed [sic] to them by the parent?

13.     Whether the trial court's order must be reversed because he relied on [CYS's] Affidavit which references drug screens while [Mother] was pregnant with [Child]?

Appellant's Brief at 5-6 (formatting altered).

As a preliminary matter, this Court has stated:

While this court is willing to liberally construe materials filed by a *pro se* litigant, we note that appellant is not entitled to any particular advantage because she lacks legal training. As our Supreme Court has explained, any layperson choosing to represent herself in a legal proceeding must, to some reasonable extent, assume the risk that her lack of expertise and legal training will prove her undoing.

***Branch Banking & Trust v. Gesiorski***, 904 A.2d 939, 942 (Pa. Super. 2006)

(citation omitted and formatting altered). Where a *pro se* appellant raises an

issue in her appellate brief that is not raised in her Pa.R.A.P. 1925(a)(2)(i)

statement, this Court may find waiver. ***In re G.D.***, 61 A.3d 1031, 1036 n.3

(Pa. Super. 2013). Instantly, Mother waived her first eight issues as they were not raised in her Rule 1925(a)(2)(i) statement. ***See id.***

## Right to Counsel

In support of her ninth issue, Mother argues that the trial court violated her right to counsel because Attorney Barket was not present at the emergency shelter care hearing. Mother's Brief at 8, 10. Mother asserts the trial court failed to comply with Pa.R.J.C.P. 1406 and 42 Pa.C.S. § 6337. ***Id.***

Section 6337 of the Juvenile Code states in relevant part:

Except as provided under this section and in section 6311 (relating to guardian *ad litem* for child in court proceedings), a party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him. If a party other than a child appears at a hearing without counsel the court shall ascertain whether he knows of his right thereto and to be provided with counsel by the court if applicable. The court may continue the proceeding to enable a party to obtain counsel. . . .

42 Pa.C.S. § 6337; ***see also In re S.U.***, 204 A.3d 949, 959 (Pa. Super. 2019) (noting there is a right to counsel for parents in dependency cases).

Pennsylvania Rule of Juvenile Court Procedure 1406 states, in relevant part:

(1) *Notification*. Prior to commencing the proceedings, the court shall ascertain:

(a) whether notice requirements pursuant to Rules 1360 and 1361 have been met; and

(b) whether unrepresented parties have been informed of the right to counsel pursuant to 42 Pa.C.S. § 6337.

Pa.R.J.C.P. 1406(A)(1)(a)-(b).

Instantly, at the emergency shelter care hearing, Attorney Barket was not present to represent Mother. N.T. Hr'g, 5/20/21, at 3. The trial court, however, proceeded with the hearing notwithstanding Mother's right to representation, and ordered Child to remain at the hospital pending the dependency hearing. This was error because, under Section 6337, Mother was entitled to representation "at all stages of any" Juvenile Act proceeding. Further, we are troubled that the trial court opted to proceed with the hearing even though Mother's attorney could not attend. *See* 42 Pa.C.S. § 6337; *see also* Pa.R.J.C.P. 1406(A)(1).

However, the record shows that Attorney Barket represented Mother at the dependency hearing, held a few days later and the court thoroughly addressed the matters raised during the shelter care hearing. Further, the parties' testimony at the dependency hearing went into greater depth and detail than their testimony at the emergency shelter care hearing. Child remained hospitalized during both the emergency shelter care and dependency hearing, and, accordingly, was not moved anywhere else. Given these circumstances, we decline to find reversible error based solely on the

fact that Mother was not represented by counsel at the emergency shelter care hearing.[5] *Cf. S.U.*, 204 A.3d at 959.

## Sufficiency of the Evidence

We summarize Mother's arguments in support of her remaining issues together, as they are interrelated. In Mother's view, CYS had no basis to apply for emergency custody because the allegations were false, Child was not in danger and not born addicted to narcotics, and Mother had maintained her sobriety. Mother's Brief at 11. Mother asserts that CYS did not establish it was "clearly necessary" to remove Child from her care. *Id.* In any event, Mother argues that CYS should have created a safety plan as an alternative to removal. *Id.* Mother alleges that CYS did not present, suggest, or provide services to her. *Id.* at 12. Finally, Mother claims that CYS "should have to present what they actually did and whom they contacted" to justify removal. *Id.* at 10.

> Our standard of review follows:
>
> In reviewing an order in a dependency matter, our standard of review requires us to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

---

[5] We are concerned that the trial court proceeded with the emergency shelter care hearing without the presence of Mother's court-appointed counsel. We urge the trial court to reconsider holding any hearing in which court-appointed counsel is not present.

*In re N.B.*, 260 A.3d 236, 245 (Pa. Super. 2021) (citation omitted and formatting altered).

We are guided by the following:

To adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child[] is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

Clear and convincing evidence has been defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

In accordance with the overarching purpose of the Juvenile Act to preserve the unity of the family whenever possible, a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available. This Court has defined proper parental care as that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child.

*In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (citations omitted and formatting altered); *accord* 42 Pa.C.S. § 6351(a).

"Following a finding of dependency, the trial court may make an order for the child's disposition pursuant to the Juvenile Act, which is best suited to the safety, protection and physical, mental, and moral welfare of the child."

*In re A.C.*, 237 A.3d 553, 564 (Pa. Super. 2020) (formatting altered, citations and footnote omitted).

Under the provisions of the Juvenile Act, . . . the trial court is given broad discretion in meeting the goal of entering a disposition best

suited to the protection and physical, mental, and moral welfare of the child. The trial court's decision to permit a child to either remain with his present caretaker(s), or to temporarily transfer custody to a qualified agency or individual, is subject only to the express limitation that the disposition be in the best interest of the child.

*Id.* at 565 (citations omitted and formatting altered).

A child may be removed from a parent's care only upon a showing of clear necessity; clear necessity exits where the continuation of the child in his home would be contrary to the welfare, safety, or health of the child and reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal.

*In re La.-Ra. W.*, --- A.3d ---, ---, 2021 PA Super 227, 2021 WL 5443285, *14 (Pa. Super. filed Nov. 22, 2021) (citations omitted and formatting altered).

CYS is required to comply with the "family finding" requirement when it accepts a child for service. *See* 67 Pa.C.S. § 3103 (stating, "[f]amily finding shall be conducted for a child when the child is accepted for service"). Section 3102 defines "family finding" as follows:

"**Family finding**." Ongoing diligent efforts between a county agency, or its contracted providers, and relatives and kin to:

(1) Search for and identify adult relatives and kin and engage them in children and youth social service planning and delivery.

(2) Gain commitment from relatives and kin to support a child or parent receiving children and youth social services.

*Id.* § 3102.

CYS may also provide services, which include:

> (1) *Counseling service*. Supportive and therapeutic activities provided to a child or a child's family and directed at preventing or alleviating conditions, including crisis conditions, which present a risk to the safety or well-being of the child by improving problem-solving and coping skills, interpersonal functioning, the stability of the family, or the capacity of the family to function independently.

55 Pa. Code § 3130.35(1).

After careful review of the parties' arguments, the record, and the trial court's opinion, we agree with the trial court's reasoning that the record supports the finding that it was unsafe for Child to remain in Mother's custody. CYS had conducted family finding but identified no kinship placements, including the fact that maternal grandmother had substance abuse issues and at least one open case herself with CYS which raised concerns for Child's safety in that Mother and Child had been residing with maternal grandmother. Further, CYS had provided services to Mother unsuccessfully.[6] **See** Trial Ct. Op. at 11-14. Additionally, Mother had six positive drug test results while pregnant with Child and tested positive for PCP on the day Child was born. **Id.** at 12. Further, CYS presented testimony regarding potential "family finding" for Child. **See id.** at 12-13; **see also** 67 Pa.C.S. § 3102. Finally, the record refutes Mother's assertion that CYS did not provide services, as Ms.

_____

[6] We note that the trial court inadvertently stated that Child should not remain at home, when the record reflects that Child was hospitalized at all relevant times. **See** Trial Ct. Op. at 13. It appears that the trial court's statement is referring to the safety concerns addressed in its opinion such that Child should not return to his maternal grandmother's home.

Moyer testified regarding Mother's refusal of inpatient treatment. **See** N.T. Hr'g, 5/24/21, at 7, 13. To the extent Mother argues CYS should have created a safety plan, Mother waived her argument because she did not identify any legal authority requiring CYS to create such a plan instead of pursuing removal. **See Gesiorski**, 904 A.2d at 942. Because the record supports the trial court's findings and we find no abuse of discretion nor error of law by the trial court, we affirm the order.[7] **See N.B.**, 260 A.3d at 245.

Order affirmed. Application for relief denied.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2022

---

[7] We agree with CYS and the trial court that should Mother continue to make substantial progress in remaining sober, she may move for appropriate relief.

IN THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY, PA
JUVENILE DIVISION

IN THE INTEREST OF:                    :        DP-149-2021
E.M., a minor                          :        659 MDA 2021
                                       :

Karen E. Rismiller, Esq. – for Schuylkill County Children and Youth Services
Mark A. Barket, Esq. – for the Appellant
Thomas J. Campion, Jr., Esq. – Guardian ad Litem for the minor child

### OPINION PURSUANT TO PA.R.A.P. 1925

GOODMAN, J.

### I.    PROCEDURAL HISTORY

The Appellant, ████████ who is the biological mother of the minor child, E.M., filed a

notice of appeal on May 28, 2021 from the Honorable Senior Judge Robert B. Sacavage's Order

of Adjudication and Disposition dated May 24, 2021.[1] The relevant procedural history of this

matter is summarized as follows. On or about May 17, 2021, Schuylkill County Children &

Youth Services ("CYS") filed an Application & Affidavit requesting that emergency custody of

E.M. be granted to the agency for placement of the minor child in foster care. On that same date,

the Honorable Judge Cyrus Palmer Dolbin issued a Protective Custody Order of Court granting

CYS' request pursuant to the Juvenile Act of July 9, 1976, P.L. 586, No. 142 as amended

effective June 27, 1978; 42 Pa.C.S.A. § 6325.[2] On or about May 20, 2021, CYS filed a

Dependency Petition. An informal emergency shelter care hearing was held, pursuant to 42

Pa.C.S.§ 6332, on May 20, 2021 before the Honorable Senior Judge D. Michael Stine. By Order

of Court dated May 20, 2021, Senior Judge Stine determined that the May 17, 2021 Protective

Custody Order of Court would remain in effect until further Order of Court. A dependency

---

[1] The Order of Adjudication and Disposition was filed on May 25, 2021.
[2] By separate Order of Court, date May 17, 2021, Thomas J. Campion, Jr. Esq. was appointed to act as Guardian ad Litem for the minor child.

hearing was held before Senior Judge Sacavage on May 24, 2021. By Order of Adjudication and Disposition dated, May 24, 2021, Senior Judge Sacavage found E.M. to be a "dependent child", and that it was in the minor child's best interests to be removed from Appellant's home.[3]

On or about May 28, 2021, Appellant filed her Notice of Appeal, a Statement of Matters Complained of on Appeal, a Motion to Proceed *In Forma Pauperis*, and a Petition for Appointment of Counsel. On or about June 07, 2021, Appellant filed a Petition for Clarification, a Petition seeking information about her transcript requests and her *In Forma Pauperis* application, and a Petition for New Hearing and the Return of Child Pending that Hearing. By Order of Court dated June 08, 2021, the undersigned member of this Court issued an Order which granted Appellant's Motion to Proceed *In Forma Pauperis*; denied her petition for Appointment of Counsel[4], and further directed Appellant to comply with Pa.R.A.P. 1911. On or about June 09, 2021, Attorney Barket filed a Petition to Withdraw as Counsel, in which he asserted that Appellant had discharged him and that the instant appeal is frivolous. In response to Attorney Barket's request to withdraw as counsel, the undersigned member of this Court entered an Order dated June 10, 2021, which directed Attorney Barket to comply with the requirements of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d. 493 (1967), and its progeny by June 21, 2021. Our June 10, 2021 Order further dismissed Appellant's remaining June 07, 2021 *pro se* Petitions as legal nullities. On or about June 14, 2021, Appellant filed a Petition seeking entry of an order that would inform Appellant how and/or why CYS was able to prepare an appeal withdrawal statement for her to sign without Appellant's knowledge or request. In this

---

[3] Senior Judge Sacavage determined that maternal relatives, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ had been ruled out as resources for E.M. in three separate Orders of Court, which were dated May 24, 2021, and filed on May 25, 2021. Additionally, in an Order of Court dated May 24, 2021, which was filed on June 08, 2021, Senior Judge Sacavage found that the maternal grandmother, ▮▮▮▮▮▮ was also ruled out as a resource for E.M.
[4] Appellant was already represented by court appointed counsel, Mark A. Barket, Esq., when she filed her May 28, 2021 Petition for Appointment of Counsel.

petition, Appellant argues that her June 07, 2021 *pro se* Petition for Clarification and Petition for New Hearing and Return of Child are not legal nullities pursuant to Pennsylvania Rule of Civil Procedure No. 121(g)(ii)&(iv).[5]

On or about June 16, 2021, the Superior Court of Pennsylvania entered an Order indicating that our May 25, 2021 Dependency Order, to which the instant appeal has been taken, had not been entered on the trial court docket.[6] On or about June 16, 2021 the Clerk of Courts for the Schuylkill County Court of Common Pleas transmitted the record to the Pennsylvania Superior Court's Prothonotary Office. By Order of Court dated June 17, 2021, this Court offered further clarification regarding the Dependency Order that is dated May 24, 2021, but was filed on May 25, 2021. On or about June 18, 2021, Attorney Barket filed his *Anders Brief*, in which he alleges that Appellant discharged him as counsel, and that Appellant's *pro se* appeal is frivolous because this Court's finding of dependency pursuant to 42 Pa. C.S.A. § 6302 is supported by substantial

---

[5]However, this Court has determined that Appellant's June 07, 2021 Petitions are not the equivalent of a request to change or remove counsel pursuant to Pa.R.A.P. 121(g)(ii) or a complaint that existing counsel has abandoned Appellant pursuant to Pa.R.A.P. 121(g)(iv). In her Petition for New Hearing and Return of Child, Appellant indicated that she believed violations of 42 Pa.C.S. § 6337, Pa.R.C.P. 1406(c), Pa.R.C.P. 1408 and Pa.R.C.P 1409 occurred during her May 20, 2021 and May 24, 2021 hearings. Appellant requested that E.M. be returned to her and that a new hearing be scheduled as a result of these alleged violations. However, this matter is already on appeal. In her June 07, 2021 Petition for Clarification, Appellant requested that this Court provide her with written clarification as to how and/or why alleged actions of CYS and/or Attorney Barket are legal, how they do not violate her rights, and how Attorney Barket and CYS could continue to engage in the alleged behavior. Appellant requested that the Court provide written clarification for her following questions:
  (1) How Attorney Barket was able to tell Appellant that he was not qualified for an appeal and that her appeal had no merit;
  (2) How CYS could prepare an appeal withdrawal document for Appellant to sign without her knowledge or request;
  (3) How, after refusing to sign the withdrawal document, CYS could inform Appellant that E.M.'s foster mother is unable to bring E.M. for visits three times a week because it is an inconvenience to the foster mother; and
  (4) How CYS could threaten, that if Appellant did not sign the appeal withdrawal document, she would never be able to obtain court appointed counsel in the future.
Upon review of her June 07, 2021 *pro se* Petitions, it is clear that Appellant did not request to remove or to change her counsel in accordance with Pa.R.A.P 121(g)(ii). Further, it is also clear that neither of these petitions constitutes a complaint that Attorney Barket abandoned Appellant, which she would be able to file *pro se* pursuant to Pa.R.A.P. 121(g)(v).
[6]The Superior Court of Pennsylvania directed this Court to enter the May 25, 2021 Dependency Order on our docket, and it further directed this Court to provide a copy of the Order and a corrected copy of the trial court docket to the Superior Court by June 25, 2021.

3

evidence. On or about June 21, 2021, the Superior Court of Pennsylvania entered an Order, which denied Attorney Barket's request to withdraw as counsel as premature, and further vacated this Court's directive to have him file an *Anders* brief.

## II. DISCUSSION

### A. Whether the Court Erred in Granting Emergency Custody of E.M to CYS, and by Not Providing Appellant with Counsel at the May 20, 2021 Hearing

In three of her issues raised on appeal, Appellant argues that this Court erred in (1) granting CYS emergency custody of E.M., as there was no danger to the child proven; (2) transferring custody of E.M. to CYS because notarized papers were provided to the Orphan's Court on May 17, 2021, which gave temporary custody of E.M. to the maternal grandmother; and (3) not providing counsel for Appellant at the May 20, 2021 informal emergency shelter care hearing.

#### a. *Emergency Protective Custody & Shelter Care*

"Pursuant to the Juvenile Act [, 42 Pa.C.S. § 6301 *et seq.*], a trial court may place a child in protective custody if it determines that 'to allow the child to remain in the home is contrary to the welfare of the child.'" *In the Interest of M.Y.C.*, 230 A.3d 500, 508 (Pa. Super. 2020) (*quoting* 42 Pa.C.S. § 6324(1)). Section 6325 provides that, "[a] child taken into custody shall not be...placed in shelter care prior to the hearing on the petition unless his detention or care is required to protect the person or property...of the child...or an order for his...shelter care has been made by the court pursuant to this chapter." 42 Pa.C.S § 6325. Pennsylvania Rule of Juvenile Court Procedure No. 1210 governs the Order for Protective Custody, including the findings of court and the contents of the order. Pursuant to Pa.R.J.C.P. 1210(b)(1), "[a] child may be taken into protective custody by court order when the court determines that removal of the child is necessary for the welfare and best interests of the child." Pa.R.J.C.P. 1210(b)(1).

4

In the instant matter, CYS filed its Application & Affidavit, in which the agency sought emergency custody of E.M. and placement of the minor child in foster care on or about May 17, 2021. In its Affidavit, CYS alleged that it was not safe for E.M. to remain in Appellant's care based on the agency's involvement with Appellant to address her ongoing substance abuse, mental health issues, and parenting concerns. The agency further indicated that it had concerns about Appellant's and/or extended family's diminished compliance with CYS' services, the maternal grandmother's substance abuse issues, and E.M.'s safety and well-being while in Appellant's care. CYS alleged that Appellant tested positive, on multiple occasions, for methamphetamines, amphetamines, and/or opiates while she was pregnant with E.M. Additionally, in its May 17, 2021 Affidavit, CYS alleged that reasonable efforts were made to prevent the placement of E.M.; and that the agency satisfied the requirements of Pa.R.J.C.P. 1149, regarding family finding, as the maternal cousin, ███████████ was not willing to be a resource at the time; and the maternal brother, ███████████ could not be contacted. The Affidavit further indicated that the maternal grandmother, who is the custodian for her grandson C.C., has an open case with CYS for services to address substance abuse and supervision issues. CYS further alleged that allowing E.M. to remain in Appellant's care was contrary to the health, safety, and welfare of the child. According to the agency, there were no less restrictive measures, other than transfer of custody to the agency for placement, which would assure E.M.'s safety and well-being.

By Order dated May 17, 2021, Judge Dolbin granted CYS' application for protective custody of E.M. This Order further placed the child in shelter care, pursuant to 42 Pa.C.S.A § 6325, after Judge Dolbin determined that allowing E.M. to remain in the home would be contrary to the welfare and/or best interests of E.M. This determination was based on CYS' history of

5

involvement with Appellant; the agency's concerns related to Appellant's and maternal grandmother's substance abuse issues; Appellant's mental health issues, CYS' concerns about inadequate parenting and supervision of the minor child, criminal activity, housing issues, and the incarceration of E.M's alleged father. Based on the record, it was proper for Judge Dolbin to grant protective custody of E.M. and to place the child in shelter care, pursuant to 42 Pa.C.S.A. § 6325, because he determined that allowing E.M. to remain in the home would be contrary to the welfare of the child. Therefore, Appellant's arguments, which indicate that this Court erred in granting CYS emergency custody of E.M are without merit.

### b. The May 20, 2021 Informal Emergency Shelter Care Hearing and Appellant's Right to Counsel

The right to counsel in Juvenile Matters is provided for by 42 Pa.C.S.A. § 6337. Section 6337 indicates that

> a party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him. If a party other than a child appears at a hearing without counsel the court shall ascertain whether he knows of his right thereto and to be provided with counsel by the court if applicable. The court may continue the proceeding to enable a party to obtain counsel.

42 Pa.C.S.A. § 6337. Pursuant to 42 Pa.C.S. § 6332(a)[7], after the child is placed in shelter care, an informal hearing must be held within 72 hours of the child's placement

---

[7]Section 6322(a) provides that
[a]n informal hearing shall be held promptly by the court or master and not later than 72 hours after the child is placed in detention or shelter care to determine whether his detention or shelter care is required under section 6325 (relating to detention of child), whether to allow the child to remain in the home would be contrary to the welfare of the child and, if the child is alleged to be delinquent, whether probable cause exists that the child has committed a delinquent act. Reasonable notice thereof, either oral or written, stating the time, place, and purpose of the hearing shall be given to the child and if they can be found, to his parents, guardian, or other custodian. Prior to the commencement of the hearing the court or master shall inform the parties of their right to counsel and to appointed counsel if they are needy persons, and of the right of the child to remain silent with respect to any allegations of delinquency. If the child is alleged to be a dependent child, the court or master shall also determine whether reasonable efforts were made to prevent such placement or, in the case of an emergency placement where services were not offered and could not have prevented the necessity of placement, whether this level of effort was reasonable due to the emergency nature of the situation, safety considerations and circumstances of the family. 42 Pa.C.S.A § 6332(a).

6

to determine whether his...shelter care is required under section 6325[8] (relating to detention of child), whether to allow the child to remain in the home would be contrary to the welfare of the child and, if the child is alleged to be delinquent, whether probable cause exists that the child has committed a delinquent act.

42 Pa.C.S. § 6332(a). Section 6332(a) further provides that "[p]rior to the commencement of the [informal] hearing the court or master shall inform the parties of their right to counsel and to appointed counsel if they are needy persons...." 42 Pa.C.S. § 6332(a). Additionally, the Official Comment of Rule of Juvenile Court Procedure No. 1151(E) provides that, in a dependency matter, "the court is to inform all parties of the right to counsel if they appear at a hearing without counsel. If a party is without financial resources or otherwise unable to employ counsel, the court is to appoint counsel prior to the proceeding." Pa.J.R.C.P. No. 1151(E), Official Comment.

In the instant matter, an informal hearing was held on May 20, 2021, before Senior Judge Stine, after E.M. was placed in protective custody and/or in shelter care on May 17, 2021. At the informal hearing, Karen E. Rismiller, Esq., counsel for CYS, informed this Court that Appellant applied for court appointed counsel on or about May 16, 2021. See Emergency Shelter Care Hearing, 3:6-13, May 20, 2021. Attorney Rismiller further indicated that Attorney Barket had been appointed as counsel for Appellant the morning of the informal hearing; however, he was unable to attend. See Emergency Shelter Care Hearing, 3:6-13, May 20, 2021. Additionally, at the informal hearing, Senior Judge Stine clarified Appellant's right to an attorney, on the record, before said hearing commenced. See Emergency Shelter Care Hearing, 5:23-25, May 20, 2021. At the conclusion of the May 20, 2021 informal hearing, Senior Judge Stine found that it was necessary for E.M. to remain subject to the May 17, 2021 Protective Custody Order of Court until

---

[8]Section 6325 provides that

[a] child taken into custody shall not be detained or placed in shelter care prior to the hearing on the petition unless his detention or care is required to protect the person or property of others or of the child or because the child may abscond or be removed from the jurisdiction of the court or because he has no parent, guardian, or custodian or other person able to provide supervision and care for him and return him to the court when required, or an order for his detention or shelter care has been made by the court pursuant to this chapter.

42 Pa.C.S.A. § 6325.

7

the dependency hearing occurred, which was scheduled for May 24, 2021. See Emergency Shelter Care Hearing, 27:12-25, May 20, 2021. Senior Judge Stine determined that the child should remain in shelter care because (1) Judge Dolbin had issued an Order determining E.M. required shelter care pursuant to 42 Pa.C.S.A § 6325; and (2) allowing E.M. to return to Appellant's home would be detrimental to the child's welfare and best interests because Appellant had relapsed[9], her recent cooperation with CYS and her negative drug screens were "very short lived", and her recent compliance and sobriety were partly the result of Appellant's incarceration for a probation revocation. See Emergency Shelter Care Hearing, 20:6-11; 27:1-24, May 20, 2021. Judge Stine entered an Order of Court the same day, which placed E.M. in shelter care and directed that the May 17, 2021 Protective Custody Order remain in effect pending further Order of Court.

Based on the record, this Court properly held an informal emergency shelter care hearing, pursuant to 42 Pa.C.S. § 6332(a), within 72 hours after Judge Dolbin issued his May 17, 2021 Order, which placed E.M. in CYS' protective custody and/or in shelter care. Further, the transcript for the May 20, 2021 informal hearing illustrates that Appellant was properly informed of her right to court appointed counsel before the commencement of the informal hearing, as well as, that counsel was properly appointed before the dependency proceeding occurred, which is required by Pa.R.C.P. 1151(E). Additionally, the record reflects that, Judge Stine properly found that E.M. was still in need of shelter care because returning the child to Appellant's home would be contrary to E.M.'s welfare as Appellant had relapsed, she had only very recently produced negative drug screens after her release from incarceration, and because she had only recently become compliant with CYS' services. Therefore, Appellant's arguments that this Court erred in

---

[9] The testimony from Lisa Moyer, Caseworker for CYS, at the May 20, 2021 Informal Emergency Shelter Care Hearing, indicates that Ms. Moyer jointly prepared CYS' May 17, 2021 Affidavit with her supervisor, Samantha Kranch. See Emergency Shelter Care Hearing, 7:7-13, May 20, 2021. The May 17, 2021 Affidavit included a list of dates from November 6, 2020 through February 16, 2021, in which Appellant tested positive for methamphetamines, amphetamines, and or opiates on at least six occasions. See Emergency Shelter Care Hearing, 8:11-18, May 20, 2021.

8

granting emergency custody of E.M. to CYS and in not providing Appellant with counsel at the May 20, 2021 informal hearing are without merit.[10]

## B. Whether Appellant's Arguments Related to the Dependency Proceeding and/or the Determination that E.M. is a Dependent Child are Without Merit

On appeal, Appellant raises several issues that ultimately question the validity of the dependency proceeding and/or Senior Judge Sacavages' finding that E.M. is a "dependent child" pursuant to the Juvenile Act.[11] Section 6335(a) of the Juvenile Act provides that, "[i]f a child is placed in protective custody pending a dependency adjudication, the trial court must schedule the dependency hearing within 10 days of the filing of the petition. *In the Interest of M.Y.C.*, 230 A.3d 500, 508 (Pa. Super. 2020) citing 42 Pa.C.S. § 6335(a); Pa.R.J.C.P. 1404(A). A trial court can adjudicate a child dependent, pursuant to the Juvenile Act, if it finds that the child meets the requirements of one of the ten definitions of a "dependent child" found at 42 Pa.C.S.§ 6302. See *In the Interest of M.Y.C.*, 230 A.3d 500, 508 (Pa. Super. 2020). Pursuant to Section 42 Pa.C.S.A. § 6302, a "dependent child" is defined as a child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or

---

[10]In her Statement of Matters Complained of on Appeal, Appellant also argues that this Court erred in letting two different guardian ad litem's, with two different opinions, represent the child within two days' time. This argument is without merit because the transcript from the May 20, 2021 informal hearing makes it clear that Attorney Campion was appointed Guardian ad Litem for E.M., and that Attorney James Conville only acted as Guardian ad Litem because Attorney Campion was not available for the Informal Emergency Shelter Care Hearing.

[11]In her May 28, 2021 Statement of Matters Complained of on appeal, Appellant makes the following arguments that relate to the dependency proceeding: The Court erred in (1) that three different judges that were not provided all filings were able to decide the outcome of taking a child from his mother; (2) not reviewing the case file of grandmother, ▮▮▮▮▮▮ as well as putting her caseworker on the stand to testify to her good standing and being a resource for E.M. to come home as subpoenaed twice for the two hearings; (3) not considering all of the relevant negative drug screens all of which were not even part of the original affidavit to take him, the last positive screen was February 2021; (4) not considering all the resources ▮▮▮▮ has set up for herself (not one program is court ordered or required) but she set up and attends all voluntarily; (5) considering ▮▮▮▮ placement through Children and Youth , which was requested by mother back in 2013 for addiction to be a factor in her keeping her son in 2021; (6) allowing Karen Rismiller, attorney for Children and Youth question ▮▮▮▮ in regards to her sisters (▮▮▮▮ ▮▮▮▮▮▮ opioid addiction that led to her death in 2018 (3 years before E.M.'s birth), also a direct violation of civil rights as opioid addiction is considered a disability, this matter has nothing to do with ▮▮▮▮▮▮ taking care of her child in 2021 (county suit to follow); and (7) allowing Karen Rismiller to question ▮▮▮ on her having Hepatitis C and how she is able to nurse the baby being a direct violation of HIPAA and civil rights as the child was tested at the hospital and the CDC states that nursing with Hepatitis C is safe (county suit to follow).

morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk[.]

*In the Interest of M.Y.C.*, 203 A.3d at 512-513 (*quoting* 42 Pa.C.S. § 6302(1)).

"Proper parental care" is care "which (1) is geared to the particularized needs of the child and (2) at minimum, is likely to prevent serious injury to the child." *In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (citation omitted). Proof that a parent has committed abuse is not necessary for a child to be found dependent under the Juvenile Act. *In re R.R.*, 455 Pa.Super. 1, 686 A.2d 1316, 1317 (Pa. Super. 1996). Additionally, we note that "[t]he burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G.T.*, 845 A.2d 870, 872 (Pa. Super. 2004).

*In the Interest of M.Y.C.*, 203 A.3d at 513. "'The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.'" *In re G.T.* 845 A.2d 870, 872 (Pa.Super. 2004) (quoting *In re M.W.*, 842 A.2d 425,428 (Pa.Super. 2004)).

After the adjudicatory hearing occurs, the trial court must enter its findings on the dependency petition within seven days. See Pa.R.J.C.P. 1408; 42 Pa.C.S.A. § 6341(a). Rule 1408 further provides that the court must specify "which, if any, allegations were proved by clear and convincing evidence" and "whether the county agency has reasonably engaged in family finding as required pursuant to Rule 1149." Pa.J.R.C.P. 1408(1)-(2). "Once the court has made its findings under Rule 1408, the court shall enter an order whether the child is dependent[12]."

[12]The Official Comment to Pennsylvania Rule of Juvenile Court Procedure No 1409 provides that,
[b]efore the court can find a child to be dependent, there must be clear and convincing evidence in support of the petition. The burden of proof is on the petitioner. The court's inquiry is to be comprehensive and its findings are to be supported by specific findings of fact and a full discussion of the evidence. *In re LaRue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976). *See also In re Frank W.D., Jr.*, 315 Pa.Super. 510, 462 A.2d 708 (1983); *In re Clouse*, 244 Pa.Super. 396, 368 A.2d 780 (1976). The evidence must support that the child is dependent. *In the Matter of DeSavage*, 241 Pa.Super. 174, 360 A.2d 237 (1976). The court is not free to apply the best interest of the child standard as the requirements of the Juvenile Act, 42 Pa.C.S. § 6341(c), require clear and convincing evidence that the child is dependent is the proper standard. *In re Haynes*, 326 Pa. Super. 311, 473 A.2d 1365 (1983). A child, whose non-custodial parent is ready, willing, and able to provide adequate care for the child,

10

Pa.R.J.C.P. 1409(a). "If the court finds from clear and convincing evidence that the child is dependent, the court shall proceed to a dispositional hearing under Rule 1512." Pa.R.J.C.P. 1409(A)(1). If a child is found to be a dependent child, the trial court may "transfer temporary legal custody...to an agency...licensed or otherwise authorized by law to receive and provide care for the child" if this decision is "best suited to the safety, protection and physical, mental and moral welfare of the child". See 42 Pa.C.S.A. § 6351(a)(2)(ii). Section 6351(b) provides that

> [p]rior to entering any order of disposition under subsection [6351](a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:
>
> > (1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and
> > (2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or
> > (3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or
> > (4) if the court has previously determined pursuant to section 6332 (relating to informal hearing) that reasonable efforts were not made to prevent the initial removal of the child from his home, whether reasonable efforts are under way to make it possible for the child to return home; and
> > (5) if the child has a sibling who is subject to removal from his home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling.

42 Pa.C.S.A. § 6351(b)(1)-(5).

In the instant matter, CYS filed its Dependency Petition on or about May 20, 2021. A dependency hearing was held before Senior Judge Sacavage on May 24, 2021, four days after the dependency petition was filed. At the dependency hearing, testimony was offered which reflects the following. The primary focus of the court ordered services that CYS provides to Appellant is

cannot be found dependent on the basis of lacking proper parental care and control. *In re M.L.*, 562 Pa. 646, 757 A.2d 849 (2000). A trial court has the authority to transfer custody or modify custody to the child's non-custodial parent without a finding of dependency if sufficient evidence of dependency would have existed but for the availability of the non-custodial parent. *In re Justin S.*, 375 Pa.Super. 88, 543 A.2d 1192 (1988). Pa.R.J.C.P 1409, Official Comment.

11

to address Appellant's substance abuse, mental health issues, and her inability to maintain sobriety. See Dependency Hearing, 6:3-5, May 24, 2021. CYS has concerns for E.M.'s safety and well-being because of Appellant's relapse and her failure to comply with services. On several occasions, Appellant tested positive for methamphetamine, amphetamines, opiates, and/or marijuana while pregnant with E.M, and while being supervised by Adult Probation. See Dependency Hearing, 7:13-25; 8:1-21, May 24, 2021. Additionally, Appellant tested positive for Phencyclidine ("PCP), as part of a drug screen that was administered by CYS on the date of E.M.'s birth. See Dependency Hearing, 8:9-25; 9:1-19, May 24, 2021. When E.M was born, his score for withdrawal due to Subetex[13] was a one (1); however, on May 22, 2021, this score increased to a six (6), and then decreased to between "2's and 3's" over that weekend. See Dependency Hearing, 11:4-22, May 24, 2021. Appellant was recommended to receive inpatient treatment and/or admission to a halfway house program for drug abuse issues; however, Appellant declined to enter this type of treatment because she believes she is sober and because she would like E.M. to be present with her at the facility as soon as the treatment commences. See Dependency Hearing, 13:1-25; 20:20-25; 21:1; 28:23-25; 29:1-10, May 24, 2021. CYS also expressed concerns for Appellant's home environment because maternal grandmother has an open case with CYS; maternal grandmother most recently tested positive for methamphetamine on April 5, 2021; and maternal grandmother has not been cooperative with CYS or her caseworker. See Dependency Hearing, 12: 5-10, May 24, 2021.

Additionally, at the May 24, 2021 Dependency Hearing, testimony was also offered with regard to the agency's efforts to utilize family resources as an alternative to placement. According to the agency, ▮▮▮▮▮▮▮▮▮▮ the maternal grandmother, and

---

[13]On or about February 17, 2021, Appellant was hospitalized at Lehigh Valley Cedar Crest due to drug withdrawl. At that time, Appellant admitted to using intravenous heroin and methamphetamine while pregnant, and sought Subutex for her drug withdrawal. See Dependency Hearing, 7:10-17, May 24, 2021.

12

maternal relative, ███████████ were all presented as resources for E.M. See Dependency Hearing, 14:10-25; 15:1-9, May 24, 2021. However, ██████████ was ruled out as resource because he refused a drug screen; ███████████ indicated she did not wish to be a resource at this time; ███████████ was ruled out as a resource because she did not return the agency's call and the agency did not know her address; and maternal grandmother was previously ruled out due to having an open CYS case and a recent positive drug screen for methamphetamine. See Dependency Hearing, 14:12-25; 15:1-9, May 24, 2021. On the record, at the dependency hearing, Senior Judge Sacavage adopted CYS' recommendation that E.M. be found dependent and removed from the home, and he explained his reasoning for doing so.

In his May 24, 2021 Order of Adjudication and Disposition, which was filed on May 25, 2021, Senior Judge Sacavage found E.M. to be dependent, pursuant to the first definition of a "dependent child" found at 42 Pa.C.S.A. § 6302. Senior Judge Sacavage explained that there was clear and convincing evidence that E.M is without proper care or control, subsistence, education as required by law, or other care or control necessary for his/her physical mental, or emotional health or morals. Additionally, in the May 24, 2021 Order of Adjudication and Disposition, Senior Judge Sacavage found that it was in E.M.'s best interests to be removed from Appellant's home because allowing the child to remain in the home would be contrary to his welfare, as well as, that reasonable efforts were made by CYS to prevent or eliminate the need for removal from the home. Senior Judge Sacavage further determined that CYS satisfied the requirements of Pa.R.J.C.P. 1149, regarding family finding. Upon review of the record, it is clear that Senior Judge Sacavage properly found E.M. to be a dependent child pursuant to 42 Pa.C.SA. § 6302, because E.M. is without "proper parental care", and such care and control are not immediately available to him. Through the allegations made in CYS' Dependency Petition and the testimony

13

that was presented at the May 24, 2021, it has been shown, by clear and convincing evidence, that Appellant has placed the health, safety, and/or welfare of the child at risk through her continued abuse of controlled substances, her short lived compliance with court ordered CYS services, and by residing in a home with maternal grandmother, who has also tested positive for methamphetamine use. The record further reflects that "proper parental care" is not immediately available to E.M. in Appellant's home or through any family resources. Therefore, Senior Judge Sacavage properly determined that E.M. is a dependent child. Additionally, before making his determination that E.M. should be removed from the home in his May 24, 2021 Order of Adjudication and Disposition, Senior Judge Sacavage abided by 42 Pa.C.S.A. § 6351(b), and entered the required placement findings on the record. Therefore, the issues that Appellant raises on appeal, which challenge the validity of the dependency proceeding and/or the determination that the child is a "dependent child" are without merit. As such, we respectfully request that the Superior Court of Pennsylvania should uphold this Court's May 24, 2021 Order of Adjudication and Disposition, which was filed on May 25, 2021.

14